The State of Ohio, Appellee, v. Smith, Appellant.

(No. C73099—Decided January 28, 1974.)

*Mr. Simon L. Leis, Jr.*, prosecuting attorney, and *Mr. Ronald A. Panioto* for appellee.

*Mr. Maury M. Tepper* and *Mr. Eugene Sidney Bayer*, for appellant.

Donofrio, J. This is an appeal from a conviction for possession of a narcotic drug for sale, in violation of the R. C. 3719.20. This was a second trial of the defendant, appellant herein, on the same charge.

The defendant was arrested on March 25, 1972, at a motel in Hamilton County, Ohio, and was charged, along with a codefendant, Frisco J. Blackburn. The first trial of this matter was tried to a jury. That jury found Mr. Blackburn guilty as charged, but could not arrive at a verdict so was discharged as to the defendant.

Defendant was brought to trial a second time on the charge of having a narcotic drug for sale. At the second trial, the jury returned a verdict of guilty, sentence was pronounced forthwith, and defendant was sentenced to ten to twenty years in the Ohio Penitentiary as provided by law.

In March of 1972, codefendant Frisco Blackburn was

living in Ypsilanti, Michigan. Blackburn requested defendant to drive with him to Cincinnati, and in the early morning hours of March 25, 1972, Blackburn and defendant checked into the Scottish Inn on Chester Road, Hamilton County, Ohio.

Blackburn was a former resident of Cincinnati, and his purpose in coming back was twofold. First, he wanted to visit his father in Cincinnati, who was ill. Secondly, he had been addicted to narcotics, and wanted to buy narcotics in Cincinnati. He had not lived in Michigan very long and didn't know anybody there from whom he could purchase narcotics. Blackburn had persuaded defendant to accompany him on the trip to help him drive.

They arrived in Cincinnati between 6:30 and 7 a. m. on the morning of March 25, 1972. After checking into the motel, Blackburn left defendant in the room while he went to purchase narcotics from someone in North College Hill. When he returned to the room, defendant was in the shower, and Blackburn proceeded to administer some of the drug, which he had recently purchased, to himself. He placed the open packet on the wash basin in the rear of the motel room and placed the rest of his purchase in a drawer and closed the drawer.

Early that same morning, the Sharonville Police received a "tip" over the telephone that Blackburn would be at a motel on Chester Road, and that he was driving a small foreign sports car, painted blue. The source of this information was federal agent Gus Ginnis.

Terry Jones, an officer of the Sharonville Police Department, had knowledge that there was a warrant out for Mr. Blackburn for armed robbery. Neither Officer Jones, nor any of the other policemen involved in this matter knew the defendant, but they did know Blackburn.

Officer Jones located a car matching the description of the one he had been given and he determined that its occupants had checked into Room 219 at the Scottish Inn. The room was registered to Charles Smith, the defendant, of a party of two.

Officer Jones drove back to the Police Station and re-

turned to the motel with three other officers. They knocked on room 219, and it was answered by Blackburn. The officers proceeded into the motel room and placed Blackburn under arrest for armed robbery. At that time, defendant was lying on the bed nearest the window. While the police officers were in the motel room, they discovered, in a dresser drawer in open view, some packets of white powder along with various paraphernalia used in the administering of drugs.

There is a conflict in the testimony as to exactly how the officers came to discover the contraband. Officer Carlson testified on direct and cross-examination that when he entered the room the top drawer was open "approximately three to four inches."

Blackburn testified for the defense and on cross-examination and stated that the drawer where the narcotics was found was closed. Officer Carlson testified that Officer Hodge called his attention to the contents of the drawer. Officer Jones was also in the room, but was not asked if he observed the open drawer. Officer Jones, only, arrested Smith. The substances discovered in the room were sent to the Chicago Regional Lab of the Bureau of Narcotics and Dangerous Drugs for analysis.

Roger Fuelster, a forensic chemist, testified that he performed the analysis on the substance submitted and determined that it contained heroin. The total substance submitted for analysis weighed 35.8 grams, or approximately 1¼ ounces. (A standard conversion chart reveals that one ounce contains 28.14 grams.)

On behalf of the defendant, assignments of error and briefs were filed by the two defense attorneys, Eugene Sidney Bayer and Maury M. Tepper. The two briefs contained a total of five assignments of error, the first of which states that the statute under which the defendant was convicted fails for lack of standards. The statute referred to under which the defendant was charged and convicted is R. C. 3719.20 (A), which reads, in part:

"No person shall:

"(A) Possess for sale a narcotic drug except in ac-

cordance with the provisions of sections 3719.01 to 3719.-22, inclusive, of the Revised Code.''

We find that the statute under which this defendant was charged is extremely clear and explicit, stating, in essence, that ''no person shall possess for sale a narcotic drug.'' The other portion of the section deals with exceptions that are not pertinent to this assignment of error. We find that this section is neither unconstitutional nor indefinite for lack of standards and, therefore, we overrule defendant's assignment of error number one.

Another assignment of error put forth by the defendant is that the prosecutor's attempt to discredit a defense witness through impermissible leading questions amounted to prejudicial conduct. There was no evidence, directly, that the defendant was a seller or pusher of narcotics. Defendant's argument is based on the phrasing of certain questions propounded by the prosecutor, such as:

''Q. Is it also not true that you know he is a narcotic user in Detroit and he is a big narcotics user or pusher?''

Defendant argues that even though the objection was sustained, it is prejudicial in its effect on the jury.

Another question, asked of Blackburn's wife by the prosecutor, as evidenced by the record, is as follows:

''Q. I will ask you if you did not tell me, with tears in your eyes down in my office, that your husband could not testify against this defendant Charles Smith because your life and your baby's life has been threatened and he would have to take the whole blame?''

This question was asked of a state's witness, the wife of Blackburn, and the objections to this question were sustained.

Defendant argues that the prosecutor's intent was to discredit the chief defense witness, Blackburn, who had been previously convicted of possession of narcotics for sale, sentenced, and was then serving time, and who testified on behalf of the defendant herein that the substances found that day in the motel room actually belonged to him, Blackburn, and not the defendant.

Defendant argues that these questions were purpose-

ly phrased in such a manner as to present testimony to the jury. not through witnesses but through the prosecutor, and the fact that objections were offered and sustained does not eliminate the prejudicial harm that the questions caused.

As to this assignment of error, we find that the prosetor's conduct is very objectionable and was in error, but we find that such was not prejudicial error.

The court instructed the jury as follows:

"You must not speculate as to why the court sustained an objection to any question or what the answer to such question might have been. You must not draw any inference or speculate on the truth of any suggestion included in such a question which was not answered."

We caution, however, that the prosecution should refrain from posing such questions that he obviously knows are objectionable and may tend to be prejudicial in the manner of presentation.

This assignment of error is overruled.

Another assignment of error put forth by the defendant is that the court erred in overruling the defendant's motion to strike the testimony and exhibits taken from defendant's motel room following an illegal search. As to this contention, we do not find error in the overruling of defendant's motion to strike the testimony and exhibits taken from the defendant's motel room.

There is no question that the officers had a warrant for the arrest of Blackburn for armed robbery, and they had reasonable grounds to believe that on the morning of March 25, 1972, he was in the Scottish Inn on Chester Road in Hamilton County. There was sufficient evidence that when the officers came into the room the contraband in question was in plain view, since the dresser drawer containing the contraband was open approximately three to four inches.

Although defense witness Blackburn testified that the drawer was closed, this would be a matter of credibility. There was sufficient evidence given that the open view doctrine would apply and the seizure of the contraband would

be lawful. Therefore, the assignment of error as to an illegal search is overruled.

The two assignments of error remaining—that the verdict is against the manifest weight of the evidence and is contrary to law and the inference upon which the state relied was speculative and not founded upon fact—will be combined as they are directed to the evidence. (The latter referred to the amount or quantity of heroin that was testified to by the chemist as pure speculation; his testimony as to what could be added to the substance to make an enormous amount of packets, i. e. 900. was speculation and not evidence.) We will, therefore, treat both of these assignments of error as one.

This court must review the record and weigh the evidence in the light of the elements of the charge against the defendant and the degree of proof necessary to sustain a conviction, as each element must be proven by the state beyond a reasonable doubt.

As to the weight of evidence, 3 Ohio Jurisprudence 2d 788, Appellate Review, Section 809, states, in part:

"The Court of Appeals not only has power to weigh the evidence but, if the case is a proper one and the question has been properly brought up on the record, it is its duty to do so. Upon questions of this character it is practically the court of last resort. At least it is the last court which the parties have a legal right to require to pass upon the weight of the evidence."

A thorough reading of the record indicates that the *possession* of narcotics by the defendant could be inferred by circumstantial evidence. There was also an admission of possession by defendant of the portion used to give himself a "fix." This was testified to by Officer Carlson. Nowhere in the record is there any evidence of a sale by the defendant. It is argued by the prosecutor that the intent to sell is determined by the quantity that was found in the motel room.

The evidence in this case indicates that the defendant accompanied the person who purchased the narcotics in question, Blackburn, to the Cincinnati area to help him

drive. All the activity involved in obtaining the narcotic was engaged in by Blackburn, and the only evidence tying the defendant to the narcotic was the fact that he was present in the room at the time the officers seized the narcotic, in addition to an admission by the defendant that a small quantity of the narcotic was his, as testified to by one of the officers. There is no evidence in the record of sufficient probative value to sustain a verdict against defendant of possession for sale.

In the recent case of *State* v. *Haynes* (1971), 25 Ohio St. 2d 264, the Supreme Court of Ohio sets out what evidence is necessary to sufficiently establish that an accused had possession of narcotics for sale. Paragraph 2 of the syllabus states:

''2. Where an accused is charged with possession of narcotics for sale, and the only evidence of his possession for sale is (1) that in a police search of the lessee's premises the narcotics were discovered in the general living area of the premises which the accused occupied jointly with three other persons, and (2) that the accused had not been present on the premises for one week, such evidence is not sufficient to establish that the accused had possession of the narcotics for sale.''

At page 270, the court states further:

''When narcotics are discovered in the general living area of jointly occupied premises, one can only speculate as to which of the joint occupiers have possession of the narcotics. In other words, no inference of guilt in relation to any specific tenant may be drawn from the mere fact of the presence of narcotics on the premises.

''Criminal convictions cannot rest upon mere speculation; the state must establish the guilt of the accused by proof beyond a reasonable doubt.''

In the instant case, the defendant was charged with criminal possession for sale, not mere possession for personal use. It is, therefore, incumbent upon the prosecution to prove beyond a reasonable doubt that the defendant possessed the contraband for the purpose of selling it to others. Here, there is no evidence that defendant had ever sold or attempted to sell any illegal drug to anyone.

The chemist testified that he analyzed the contents of the three jars. The total substance contained in the three jars submitted for analysis was 35.8 grams or 1¼ ounces. He testified that 23.5 grams contained 6.4% heroin; that 11.5 grams contained 6.1% heroin; and that .8 grams contained 2½% heroin. Upon being questioned by the prosecutor, the chemist testified as follows:

"Q. In your tests and samples of narcotics that have been sent to you, what have you found to be the average as far as dosage of heroin?

"A. In a percentage or in weight?

"Q. In weight?

"A. At the street level, we get them usually at 100 miligrams or a tenth of a gram in these packages."

Clearly, the answer sought from the witness was the amount of heroin contained in the average dose by weight when purchased on the street. The witness responded that the average dose contained one-tenth of a gram by weight.

The defendant argues that if we accept the answer given by the witness, that an average dosage would contain one-tenth of a gram, this would mean that all of the substance obtained in the motel room could be made up to 22¼ dosages.

Defendant argues further that when the prosecutor asked how much material one would have if he assumed a 2.5% heroin mixture with other adulterants (such as lactose), and the witness answered "approximately ninety grams," the witness's testimony is directed from two different premises, first by weight and then by percentage of heroin mixture. Defendant contends that 2.5% heroin as a normal or marketable value is only an assumption without evidence.

Defendant contends that the witness, who had previously established that an average street level dosage contains one-tenth of a gram of heroin by weight, would substitute a new premise that the entire package (including adulterants) would weigh only one-tenth of a gram, and that it was a fallacious conclusion that the 90 grams would therefore yield 900 packages at street level.

Compounding the problem further, as to what con-

stitutes an average dosage, is the fact that the witness, defendant Blackburn, who is an admitted addict, testified that the substance contained in the room would have been used by him within one week's time.

We find from a reading of the record that there was insufficient evidence of probative value to infer possession for sale as to this defendant. At most, the chemist's testimony would infer possession for sale against the witness Blackburn. Considering all the circumstances that apply to this defendant, we find that the evidence before the jury inferred possession only.

Since this is the state of the evidence in the record, the verdict of the jury and the judgment of the court was against the manifest weight of the evidence as to possession for sale, and we sustain this assignment of error.

The trial court properly charged the jury that if the evidence fails to prove the original charge, but does justify a verdict of a lesser crime, the jury may find the defendant guilty of the lesser crime of "possession of a narcotic drug."

We find from a reading of the record that the jury had sufficient evidence, of probative value, either direct or circumstantial, that the defendant, beyond a reasonable doubt, had the possession or control of a narcotic drug.

We, therefore, find that the verdict and judgment of the jury and the lower court should be, and is hereby modified to read that the defendant is guilty of the possession of a narcotic drug in violation of R. C. 3719.09, and this cause is remanded to the lower court with instructions to sentence the defendant accordingly, in conformity with this opinion and the law.

*Judgment affirmed as modified.*

LYNCH, P. J., and O'NEIL, J., concur.
LYNCH, P. J., and O'NEIL and DONOFRIO, JJ., of the Seventh Appellant District, sitting by designation in the First Appellate District.