PHYSICIANS' SERVICES, INC., APPELLEE AND CROSS-APPELLANT, *v.* CITY OF WILLOUGHBY ET AL.; CITY OF MENTOR, APPELLANT AND CROSS-APPELLEE.

(No. 11-222—Decided January 8, 1987.)

*Thompson, Hine & Flory* and *Michael M. Hughes,* for appellee and cross-appellant.

*Baker, Hackenberg, Haskell & Collins* and *I. James Hackenberg,* for appellant and cross-appellee.

CASTLE, J. This is an appeal from the judgment of the Lake County Court of Common Pleas from its award of $1,436 in favor of Physicians' Services, Inc. and against the city of Mentor.

Physicians' Services is a nonprofit Ohio corporation which, at the times material to this action, had a contract with the Board of Trustees of Lake County Memorial Hospitals to provide physicians to render emergency medical care to patients in the emergency centers of the two Lake County Memorial Hospitals. Physicians-employees of Physicians' Services administered medical examinations in the hospital emergency rooms to persons who were allegedly victims of sexual offenses.

Physicians' Services submitted statements for the charges for the examinations to the municipalities in which the sexual offenses allegedly occurred. In this case, the municipalities charged were Willoughby, Eastlake, Painesville and Mentor. Each of the municipalities declined to pay the charges for the examinations based on R.C. 2907.28.

Physicians' Services initiated the instant action to obtain a declaration of who had responsibility to pay for the charges under the circumstances. On September 4, 1985, the lower court held that, under R.C. 2907.28, the municipalities were responsible for paying Physicians' Services' charges.

The city of Mentor appealed from this finding of responsibility and from the subsequent ruling that it should pay $1,436.

Physicians' Services filed a cross-appeal asserting that the lower court erred by failing to include prejudgment interest in its favor.

The city of Mentor has assigned the following errors:

"1. The trial court erred in finding that Physicians' Services, Inc., is a private facility within the meaning of Section 2907.28(C) of the Ohio Revised Code.

"2. The trial court erred in awarding judgment to Physicians' Services, Inc., in the amount of $1,436.00 against the city of Mentor based solely on hearsay evidence."

Mentor argues, in its first assigned error, that Physicians' Services was not a "private facility" within the meaning of R.C. 2907.28(C), and that pursuant to this statute, the county, not Mentor, would be responsible for payment of Physicians' Services' fees. This argument is not well-taken.

R.C. 2907.28 prescribes the following allocation to local governments of the costs for medical examinations of reported victims of specified sexual offenses:

"Any cost incurred by a hospital or other emergency medical facility in conducting a medical examination of a victim of an offense under sections 2907.02 to 2907.06 or section 2907.12 of the Revised Code for the purpose of gathering physical evidence for a possible prosecution shall be charged to and paid by the appropriate local government as follows:

"(A) Cost incurred by a county facility shall be charged to and paid by the county;

"(B) Cost incurred by a municipal facility shall be charged to and paid by the municipality;

"(C) Cost incurred by a private facility shall be charged to and paid by the municipality in which the alleged offense was committed, or charged to and paid by the county, if committed within an unincorporated area. If separate counts of an offense or separate offenses under sections

2907.02 to 2907.06 or section 2907.12 of the Revised Code took place in more than one municipality or more than one unincorporated area, or both, the local governments shall share the cost of the examination."

In determining the appropriate local government to bear the expense of these examinations, the status of the facility which incurred the cost, as county, municipal or private facility, is dispositive. Interpreting the statutorily undefined word "facility" to mean "that which eases the performance of an action," the trial court found that Physicians' Services was a "facility." Since Physicians' Services is a private corporation, the trial court held that R.C. 2907.28(C) was controlling. Pursuant thereto, the trial court ruled that the municipalities in which the alleged offenses occurred were liable to Physicians' Services for the charges for the examinations.

While neither the Revised Code nor any reported Ohio case directly addresses the question of the meaning of the word "facility" in these circumstances, the question has been considered by the Attorney General in Opinion No. 80-021. The Attorney General concluded:

"In light of the foregoing, it is my opinion, and you are advised, that a private corporation which provides examinations of sexual assault victims at the emergency room center of a county hospital for the purpose of gathering evidence for possible prosecution, and which does not charge the hospital for such services, constitutes a 'private facility' as that term is used in R.C. 2907.28(C). Pursuant to R.C. 2907.28 (C), the costs incurred by this private facility are to be charged to the municipality wherein the alleged assault occurred, or to the county if the alleged assault was committed within an unincorporated area." 1980 Ohio Atty. Gen Ops. No. 80-021, at 2-89.

The opinion of the Attorney General, therefore, supports Physicians' Services' definition of the word "facility," and is given due respect by this court.

In *Warrensville Heights* v. *Bowers* (C.P. 1961), 90 Ohio Law Abs. 116, 124, 25 O.O. 2d 101, 105, 188 N.E. 2d 85, 90, the court interpreted the meaning of the word "facility" as it was used in the context of horse racing facilities in R.C. 3769.081. The court noted that the word "facility" should be accorded its ordinary and customary meaning.

Many dictionaries list one definition of facility as including anything "that permits the easier performance of an action." See, *e.g.,* Random House Dictionary of the English Language (Unabridged Ed. 1973). Thus, the ordinary meaning of the word "facility" supports Physicians' Services' contention that it is a "facility" within the meaning of R.C. 2907.28.

R.C. 2907.28(C) provides that "[c]ost *incurred* by a private facility shall be charged to and paid by the municipality in which the alleged offense was committed * * *" (emphasis added). The question to be asked is: Who incurred the cost of the medical examinations? Physicians' Services was the facility that incurred the medical costs at issue. As it is a private facility, its expenses should be charged to the individual municipalities.

R.C. 2907.29 mandates that every hospital in Ohio which offers organized emergency services provide a physician for the examination of alleged victims of sexual offenses. The statute does not require that the employees of the hospital itself perform the examinations. It is therefore permissible for the hospital to "contract out" the duty of these emergency services, as was done in the case at bar. In accordance with the agreement between Physicians' Services and the hospitals,

Physicians' Services operated as a private-duty facility within the county hospitals. The separate and private nature of Physicians' Services is evident if only from its responsibility for separate billing for its services. We, therefore, find that a "private facility" can be situated within another county, municipal or private facility, as in this case where a private facility operated within county hospitals.

Giving the opinion of the Attorney General its due respect, and considering the ordinary definition of the word "facility" as well as the context of the word in the statute in question, we find that the trial court correctly interpreted R.C. 2907.28 and correctly charged the costs incurred by Physicians' Services to the individual municipalities. For all of the above reasons, Mentor's first assignment of error is overruled.

Mentor argues, in its second assigned error, that the trial court erred in awarding judgment to Physicians' Services based solely on hearsay evidence. Specifically, Mentor argues that R.C. 2907.28 and 2907.29 must be read *in pari materia,* and that these statutes require three criteria before medical examinations are brought within the payment provisions of R.C. 2907.28: (1) the person examined must have been reported as a sexual offense victim to a law enforcement agency prior to the examination; (2) the alleged sexual offense must be violative of R.C. 2907.02 to 2907.06 or 2907.12; and (3) the examination must be conducted for the purpose of obtaining physical evidence for possible prosecution. Mentor's argument is not well-taken.

A close reading of the statutes in question does not support Mentor's interpretation. R.C. 2907.29 reads, in part, as follows:

"Every hospital of this state which offers organized emergency services shall provide that a physician is available on call twenty-four hours each day for the examination of persons reported to any law enforcement agency to be victims of sexual offenses cognizable as violations of sections 2907.02 to 2907.06 or section 2907.12 of the Revised Code. The physician shall, upon the request of any peace officer or prosecuting attorney, and with the consent of the reported victim, or upon the request of the reported victim, examine such person for the purposes [*sic*] of gathering physical evidence. * * *"

The statute does not provide that the victim of a sexual offense must be reported to the law enforcement agency *before* the emergency services of the hospital are provided. It merely requires that victims of sexual offenses be reported. In the case at bar, after the victims were examined, the results of the examinations were then turned over to the police. We find that this procedure, at the very least, constitutes a constructive reporting of the purported crime to the proper law enforcement agency, thus complying with the requirements of R.C. 2907.29.

Bolstering this interpretation is the fact that *either* the reported victim, *or* any peace officer or prosecuting attorney, with the consent of the reported victim, may request an examination. The fact that the victim may request an examination supports the above interpretation of this statute. If the law enforcement agencies had to be notified before an examination took place, the statute would not have this provision in it. Once the law enforcement personnel were notified, they would undoubtedly automatically request an examination; therefore, the provision for the victim requesting her or his own examination would be superfluous. Thus, the statute does not require that the law

enforcement agency be notified before the examination.

Nor does R.C. 2907.29 require that the alleged offense be in violation of R.C. 2907.02 to 2907.06 or 2907.12. The statute merely requires that the offenses be *cognizable* as violations of those sections of the Revised Code. R.C. 2907.29 does not state who determines that such an offense may have occurred; thus, the reported victim or the attending physician could make this determination. The very actions of the alleged victim — going to a hospital and requesting the examination — imply that violations of those sexual-offense statutes existed. Hence, R.C. 2907.29 does not provide that the alleged offense must be violative of R.C. 2907.02 to 2907.06 or 2907.12.

Finally, Mentor urges that R.C. 2907.29 requires that the examination must be conducted for the purpose of obtaining physical evidence for possible prosecution; this requirement is clear on the face of the statute. In this case, Physicians' Services was prepared to establish, through testimony about its business records, that a rape evidence kit was used by its physicians and turned over to the police after each examination, which would satisfy this requirement.

For all of the reasons listed above, Mentor's second assigned error is overruled and the judgment of the trial court is affirmed with respect to Mentor's assigned errors.

Physicians' Services has filed the following cross-assignment of error:

"The court of common pleas erred in failing to include prejudgment interest on the judgment in favor of plaintiff."

The assigned error is well-taken.

R.C. 1343.03(A) provides:

"In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum, and no more, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract."

The action in the case at bar was quasi-contractual, and the money for the services had become due and payable. Therefore, under this statute, Physicians' Services is entitled to prejudgment interest at the rate of ten percent per annum.

This result is supported by paragraph two of the syllabus of a recent Ohio appellate case, *Nursing Staff of Cincinnati, Inc.* v. *Sherman* (1984), 13 Ohio App. 3d 328, 13 OBR 406, 469 N.E. 2d 1031:

"A party's entitlement to prejudgment interest turns upon a determination as to whether the underlying debt is liquidated. If the amount of a debt is clear and certain, the prevailing party is entitled to interest from the date the sum became due and owing."

Therefore, as the amount of debt in the present case was certain, Physicians' Services is entitled to receive prejudgment interest on that debt, as it requested in its complaint. The case is hereby remanded for a determination of the amount of interest to be awarded.

*Judgment affirmed in part, reversed in part and cause remanded.*

O'NEILL, P.J., concurs.

CRAWFORD, J., dissents.

CASTLE, J., retired, of the Twelfth Appellate District; O'NEILL, J., of the Seventh Appellate District; and CRAWFORD, J., of the Court of Common Pleas of Franklin County, sitting by assignment in the Eleventh Appellate District.

CRAWFORD, J., dissenting. I must respectfully dissent from the majority opinion which, in essence, holds that because the county hospitals have a contract with Physicians' Services to perform emergency services in the hospitals, the hospitals are not incurring any cost; and, thus, R.C. 2907.28(C) applies, rather than R.C. 2907.28(A).

No Ohio court has addressed the question of what is the proper definition of "facility" for purposes of R.C. 2907.28. The Ohio Attorney General, in Opinion No. 80-021 cited by the majority, has concluded that even though "facility" can be defined as a place or building, it should have a broader meaning, under R.C. 2907.28, to include the services performed at a hospital. I cannot agree.

It is clear that the legislature in drafting R.C. 2907.28 in 1975 was presented with three hypothetical places a sexually assaulted person might go for medical treatment: a city hospital, a county hospital or a private "facility," which could either be a hospital, a clinic or office. It further appears that the legislature desired to place the burden of paying the costs of the treatment based upon where the victim went rather than on who treated the victim. Under R.C. 2907.28, the burden is placed by law upon the medical community to provide services to victims, the cost of which will be borne by either a county or a city. The legislature did not intend to permit a "facility" to shirk or shift its liability under this statute by means of a contract or otherwise.

The only other legislative provision dealing with medical assistance for victims is contained in R.C. 2907.29. This section places a duty on all hospitals (a *place*) in the state of Ohio to have physicians available to provide medical services to sexually assaulted victims. This section provides, in part:

"Every hospital of this state which offers organized emergency services shall provide that a physician is available on call twenty-four hours each day for the examination of persons reported to any law enforcement agency to be victims of sexual offenses * * *."

In recent years numerous hospitals throughout the country have contracted with various physicians or physician organizations to provide emergency room services. This practice appears to have begun less than ten years ago and subsequent to the enactment of R.C. 2907.28. The courts throughout the country have almost unanimously agreed that contracting out will not automatically insulate a hospital from liability for the malpractice that has occurred in the emergency rooms. The Cuyahoga County Court of Appeals has summarized what I believe is the present national attitude toward contracting out emergency room services:

"Further, sound public policy demands that the full-service hospital not be permitted to contractually insulate itself from liability for acts of medical malpractice committed in its emergency room. First, the emergency room is an integrally related part of the full-service hospital. The hospital may not pretend that this essential element of its public service treatment facilities is a separate entity. Moreover, the nature of the situation when

people turn to the hospital and its emergency room facilities for treatment is one fraught with crisis. People are often highly emotional. There is frequently no time to choose. Indeed, time is of the essence. The chances of going elsewhere for treatment are remote. Given the relationship of the emergency room to the full-service hospital and the crisis circumstances under which people seek emergency treatment, public policy requires that the hospital not be able to artificially screen itself from liability for malpractice in the emergency room.

"Therefore, we hold that when an institution purporting to be a full-service hospital makes emergency room treatment available to serve the public, the hospital will be estopped to deny that the physicians and other medical personnel on duty providing treatment are its agents. Regardless of any contractual arrangements with so-called independent contractors, the hospital will be liable to the injured patient for the acts of malpractice committed in its emergency room, assuming proximate cause and damage are present." *Hannola* v. *Lakewood* (1980), 68 Ohio App. 2d 61, 65-66, 22 O.O. 3d 63, 65-66, 426 N.E. 2d 1187, 1190.

I thus conclude that cities and counties in Ohio cannot avoid their responsibility under R.C. 2907.28 by contracting out their emergency room services. It would not be necessary for this court to define the term "emergency medical facility" other than to say it includes the place where emergency room services are performed. Thus, if a victim of a sexual offense goes to a county facility, holding itself out as a hospital, clinic or other medical facility, the county shall pay the costs incurred regardless of who performs the medical services. If a victim goes to a city facility, holding itself out as a hospital, clinic or other medical facility, the city shall pay the costs incurred regardless of who performs the medical services.[1]

The city of Mentor's first assignment of error should be sustained.

---

[1] It should be noted that, under the majority's holding, a victim who is "checked into" the hospital would cause billing to go to both the county and the city — a result which would be inconsistent with the purpose of the statute.