[Cite as *State v. Smith*, 2024-Ohio-1473.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                  :

    Plaintiff-Appellee,                      :

                                         No. 113035

    v.                                             :

GWENETTA SMITH,                                 :

    Defendant-Appellant.                     :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND VACATED
**RELEASED AND JOURNALIZED:** April 18, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-677865-B

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Anjali Kanwar, Assistant Prosecuting Attorney, *for appellee.*

Jones Day and Joseph Shell, *for appellant.*

EMANUELLA D. GROVES, J.:

{¶ 1} Defendant-appellant Gwenetta Smith ("Ms. Smith") appeals judgments from the trial court, rendered after a bench trial, finding her guilty of drug possession in violation of R.C. 2925.11(A) and possession of criminal tools in

violation of R.C. 2923.24(A).  For the reasons that follow, we reverse the judgment of the trial court and vacate the convictions.

## FACTUAL AND PROCEDURAL HISTORY

{¶ 2} Ms. Smith, who is married to Frederick Johnson ("Johnson"), resided at a home on Eastwood Boulevard in Garfield Heights, Ohio, with their children.[1] On November 24, 2020, law enforcement executed a search warrant at their residence at around 6:00 a.m.  The basis for the search was a wiretap implicating two individuals unrelated to Ms. Smith.  The individuals, Myron Smith and Larry Lawson, were heard by law enforcement discussing various aspects of drug transactions.[2]  Detectives believed that a vehicle registered to Ms. Smith was observed being driven by Myron Smith during one of these drug transactions. Because the vehicle was registered at the Eastwood address, law enforcement obtained a warrant to search Ms. Smith and Johnson's home.

{¶ 3} Both Ms. Smith and Johnson were present and detained in the living room while law enforcement executed the search.  The search warrant covered a search of the residence only.  However, while law enforcement searched the

---

[1] Neither Johnson nor Ms. Smith testified at trial.  Defense counsel acknowledged that Smith and Johnson were married, but had different last names.  (Tr. 9.)

[2] The South East Area Law Enforcement ("S.E.A.L.E.") intercepted conversations between two other individuals, Myron Smith (no relation to Ms. Smith) and Larry Lawson. (Trial tr. 113:16–115:1.)  Neither lived at the subject residence.  Police observed Myron Smith drive a red Durango (Trial tr. 138:19–23), registered to Ms. Smith, at her father's Felch Street address, not where S.E.A.L.E. raided. (Trial tr. 69:19-23, 138:23–139:1, 165:6–7.)

residence, officers physically searched Johnson and discovered approximately $2,158 in cash on his person.

{¶ 4} Ms. Smith was indicted on January 20, 2023, for drug trafficking in violation of R.C. 2925.03(A)(2) (Count 1), drug possession in violation of R.C. 2925.11(A) (Count 2), and possessing criminal tools under R.C. 2923.24(A) (Count 3), all with forfeiture specifications. The charges stemmed from the fruits of a search warrant executed on November 24, 2020. There was no evidence that Ms. Smith was observed in possession of illegal drugs nor evidence of Ms. Smith's presence during surveillance of any controlled buys involving the Durango. Additionally, the search warrant did not name Ms. Smith nor Johnson as subjects of surveillance.

> Q. So we're talking about a Durango, and tell me what, if anything, did you observe or were you aware of anything Ms. Smith did in furtherance of a drug conspiracy that was alleged in Federal court?
>
> A. That I don't know. I wasn't involved in —
>
> Q. She was not a target, was she?
>
> A. No. I don't believe she was charged in Federal court.

{¶ 5} Law enforcement did not arrest Ms. Smith at the conclusion of the search, nor did they remove marijuana containers that they believed contained legal marijuana (Tr. 48). Ms. Smith was indicted approximately three years later. She pleaded not guilty, and the matter was scheduled for trial. During plea negotiations, Ms. Smith was offered intervention in lieu of conviction ("I.L.C."), which would have held the convictions of all three counts in abeyance pending Ms. Smith's successful

completion of I.L.C. conditions.[3]  Ms. Smith declined the plea offer and waived a jury trial.  The bench trial commenced on May 24, 2023.

{¶ 6} The trial court subsequently found Ms. Smith not guilty of Count 1 but guilty of Count 2, drug possession, and Count 3, possession of criminal tools; both felonies of the fifth degree.  Ms. Smith was sentenced to 12 months of community control supervision.  On July 28, 2023, Ms. Smith timely filed a notice of appeal and raised the following assignments of error:

### Assignment of Error 1

The trial court erred in denying Ms. Smith's motion for a judgment of acquittal under Crim. R. 29 regarding counts 2 and 3, because the state failed to offer sufficient evidence to support convictions of drug possession or possession of criminal tools.

### Assignment of Error 2

The trial court's findings of guilt on counts 2 and 3 were against the manifest weight of the evidence.

### Law and Analysis

{¶ 7} In her first assignment of error, Ms. Smith argues the state failed to present evidence sufficient to support convictions of drug possession or possession of criminal tools.

{¶ 8} Under Crim.R. 29(A), a trial court must enter a judgment of acquittal of an offense if the evidence is insufficient to sustain a conviction of such offense. *State v. Tyler*, 8th Dist. Cuyahoga No. 99402, 2013-Ohio-5242, ¶ 12.

---

[3] Ms. Smith's compliance with I.L.C. conditions would have resulted in the dismissal of the convictions after 12 months.

{¶ 9} A challenge to the sufficiency of evidence is a question of law reviewed de novo. *State v. Taylor*, 8th Dist. Cuyahoga No. 111694, 2023-Ohio-928, ¶ 47. An appellate court must determine whether, after reviewing the trial evidence in the light most favorable to the state, a rational trier of fact could find the essential elements of the crime are proven beyond a reasonable doubt. *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, citing *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). The reviewing court must reverse a conviction if it concludes that the state has failed to meet its burden of production at trial. *State v. Johnson*, 8th Dist. Cuyahoga No. 98245, 2013-Ohio-575, ¶ 37; *State v. Hunter,* 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41, citing *State v. Thompkins,* 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).

{¶ 10} On the other hand, a manifest weight challenge considers whether the prosecution has met its burden of persuasion. *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982). The reviewing court must reverse the conviction and order a new trial in those exceptional cases if, after thoroughly reviewing the entire record, weighing the evidence and all reasonable inferences, considering the credibility of witnesses, and determining whether, in resolving conflicts in the evidence, the trier of fact clearly lost their way and created a manifest miscarriage of justice. *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶ 168, citing *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 11} Ms. Smith was convicted of drug possession and possession of criminal tools. A conviction of drug possession under R.C. 2925.11(A) requires the state to prove that the person knowingly obtained, possessed, or used a controlled substance or a controlled substance analog.

{¶ 12} A conviction of possession of criminal tools under R.C. 2923.24(A) requires a person to possess or have control of any substance, device, instrument, or article with the purpose of using it criminally. The state must prove possession or control of the device with intent to use it criminally. *State v. Oliver*, 31 Ohio App.3d 100, 104, 508 N.E.2d 1048 (11th Dist.1987); R.C. 2923.24; *State v. Richardson*, 8th Dist. Cuyahoga No. 71626, 1997 Ohio App. LEXIS 5101 (Nov. 13, 1997). Actual possession denotes ownership or direct physical control. In contrast, constructive possession occurs when an individual knowingly exercises dominion and control over an object despite it not being immediately within the individual's possession. *See State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982).

{¶ 13} It is well settled that possession may be either constructive or actual. *State v. Natale*, 8th Dist. Cuyahoga No. 95278, 2011-Ohio-3974, ¶ 12. Both constructive knowledge and possession may be established solely through circumstantial evidence. *State v. Haynes*, 25 Ohio St.2d 264, 267 N.E.2d 787 (1971); *State v. Trembly*, 37 Ohio App.3d 134, 738 N.E.2d 93 (8th Dist.2000); *Natale* at ¶ 12. However, "constructive possession may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). *See State v. Shary*, 8th

Dist. Cuyahoga No. 109487, 2021-Ohio-3604, ¶ 45 ("Knowledge of an illegal object on one's property is sufficient to show constructive knowledge as long as the person is conscious of the object's presence.") *Id.* ¶ 46. "A person has knowledge of circumstances when he is aware that such circumstances probably exist." *Tyler*, 2013-Ohio-5242, at ¶ 15; R.C. 2901.22(B).

{¶ 14} As a preliminary matter, we note that marijuana and suspected criminal tools were found in two primary locations within the residence during the execution of the search warrant. The first main search area included the bedrooms, living room, kitchen, and Johnson's person (collectively "upstairs"). The upstairs search resulted in the discovery of the following: a marijuana bag[4] from a legal dispensary, a scale, food storage bags, a legal dispensary container used for marijuana packaging, and a gun in a top cabinet in the kitchen.[5] A gun, ammunition, and food saver bags were located in a bedroom; and in the living room, detectives discovered $2,158 on Johnson's person, two cell phones, and miscellaneous cards.

---

[4] Johnson possessed a valid medical marijuana license. There is no evidence identifying the quantity of suspected marijuana in the bag found upstairs and the marijuana found in the basement.

[5] There were inconsistencies regarding the evidence found upstairs. During closing arguments and in its brief, the state indicated the gun was discovered "in a cabinet in the kitchen, sitting on top of a box." (Tr. 151.) However, the inventory list, marked state's exhibit No. 32, indicated that the firearm was located in the "SE bedroom." Furthermore, the inventory states that a scale was found in the kitchen and in the basement. However, the photos, testimony and exhibits identified only one scale, found in the basement.

{¶ 15} The second area where contraband was discovered was in a "barber's station" set up in the basement.[6]  During the search of the "barber's station" area, detectives discovered a duffle bag containing two gallon-sized Ziploc bags of marijuana.  (State's exhibit No. 18, tr. 40.)

{¶ 16} Law enforcement also located a scale, guns, a measuring cup, a vacuum sealer, $5,000 cash, and paperwork belonging to Johnson.  Detective Griffis was unsure where the bag labeled "Terrasana,"[7] a legal dispensary, containing suspected marijuana, was actually found.  (State's exhibit No. 20, tr. 40.)

> Question:  Exhibit 20?
>
> Answer:  It's another picture of I believe the Terrasana bag.  It's very common with — I believe it's a marijuana dispensary.  I believe it contained marijuana.  I believe that was in the kitchen, I'm not a hundred percent sure though.

(Tr. 40.)

{¶ 17} Johnson held a medical marijuana license, which permitted him to possess legal marijuana for individual use.  Although some marijuana was found upstairs, a large quantity of marijuana was found in a bag in the basement.  Therefore, the two issues in this case are whether there is evidence that Ms. Smith had knowledge that the drugs and suspected criminal tools found upstairs were

---

[6] The basement consisted of two separate sections:  a barber shop section where Johnson worked and a laundry section that housed a sink, clothes washer, and dryer.

[7] There was testimony that detectives found a plastic jar that contained 2.83 grams of marijuana from Terrasana Dispensary during the search.  (Tr. 77-78.)

illegal and whether there was sufficient evidence that Ms. Smith had knowledge of the illegal drugs and contraband discovered in the "barber section" in the basement.

{¶ 18} Ms. Smith argues that there was insufficient evidence to support her convictions because she was not near illegal controlled substances when the search was executed; Johnson possessed a license to purchase marijuana legally; and there was no evidence that Ms. Smith knew that the drugs found upstairs were not legal. Furthermore, Ms. Smith alleges the state offered no evidence associating her with illegal drugs.

{¶ 19} Regarding the drugs and criminal tools found in the basement, Ms. Smith argues that there was insufficient evidence that she had knowledge of the drugs and contraband in the basement. Additionally, Ms. Smith claims there was no evidence that she could exercise dominion or control over the evidence found in plain view in Johnson's "barber section" of the basement or the black duffle bag that contained the largest quantity of marijuana. Ms. Smith offers *State v. Slade* in support of her claim that the state offered insufficient evidence that she knew there were illegal drugs and criminal tools in the home or that she could exercise dominion or control over them. *State v. Slade*, 145 Ohio App.3d 241, 243-244, 762 N.E.2d 451 (8th Dist.2001).

{¶ 20} In *Slade*, we reversed the trial court after a careful review of the facts and surrounding circumstances revealed that there was insufficient evidence of constructive possession. Law enforcement observed a drug transaction at the home Slade shared with her boyfriend. Slade was not home when detectives observed a

"controlled buy" at the residence. After executing a search warrant, law enforcement found drugs under a desk in an office in the home. There was no evidence of Slade's personal property in the office or that she had been seen with the bag containing the drugs, and her mere presence in the home was insufficient to support a conviction for constructive possession of drugs.

{¶ 21} The state points to the following circumstantial evidence as sufficient to demonstrate Ms. Smith constructively possessed a controlled substance and criminal tools: 1) Ms. Smith's status as an owner of the residence and a household member; 2) her proximity to contraband that was in plain view; and 3) Mr. Smith's intimate relationship with Johnson. The state offers two cases to support its argument that constructive possession of controlled substances is properly imputed to Ms. Smith.

{¶ 22} First, the state relies on *State v. Paige*, which held that the discovery of readily accessible drugs in proximity to an individual was sufficient circumstantial evidence that the individual was in constructive possession of the drugs. *State v. Paige,* 8th Dist. Cuyahoga No. 97939, 2012-Ohio-5727, ¶ 13, citing *State v. Pavlick,* 8th Dist. Cuyahoga No. 81925, 2003-Ohio-6632, ¶ 17.

{¶ 23} Additionally, the state cited *State v. Richardson* to support its argument that Ms. Smith's intimate relationship with Johnson was circumstantial evidence of her knowledge of illegal drugs found during the search. In *Richardson,* we determined there was sufficient evidence to establish constructive possession because of the appellant's intimate relationship with a target of the investigation;

readily usable cocaine and paraphernalia were found in plain view all over the residence; and the appellant's proximity to the illegal drugs and contraband during the search. *Richardson*, 8th Dist. Cuyahoga No. 71626, at 11. However, we find the facts and circumstances in the current case inapposite.

{¶ 24} The record before us fails to demonstrate that there were readily usable, illegal drugs or criminal tools found in plain view. Furthermore, the state's reliance on *Richardson* to infer constructive possession based on Ms. Smith's relationship with Johnson is unsubstantiated. In *Richardson,* it was undisputed that the appellant was dating the target of the investigation. However, in this case, the state's assertion that Ms. Smith was intimately involved with an individual target of the investigation is not supported by the record. The targeted individuals were Myron Smith and Larry Lawson, not Johnson.

{¶ 25} Moreover, Ms. Smith's mere presence was the only association between her and the marijuana and criminal tools found in the home.

> Question: Is there any evidence whatsoever beyond the fact that there was marijuana — not plural. This is not drugs. Marijuana. Is there any evidence that you are aware of that associates Ms. Smith in any way with the marijuana?
>
> Detective Stanton: Other than the — no, there's no other — nothing I'm aware of that associates her with the marijuana, other than her presence. Yes, that's it.

(Tr. 130, 13:20.)

{¶ 26} While Ms. Smith was present during the search of the home, she was not present during surveillance of a controlled buy, involving the Durango.

Detective Stanton testified that he was aware of no evidence that Ms. Smith violated any relevant laws.

> Question: At any time, other than a listing of a vehicle, I think a Dodge Durango, a listing, a registration to Smith, was — is there — are you aware of any evidence that Ms. Smith violated any relevant laws?
>
> Detective Stanton: No.

(Tr. 129, 16:20.)

{¶ 27} Similarly, the state's argument that the record supports Ms. Smith's conviction of possession of criminal tools is unpersuasive. The state argued in its brief:

> Appellant had full access and control of the entire premises. Moreover, detective testimony also revealed that the marijuana and criminal tools were out in the open, in plain view.

(State's Brief 11.)

{¶ 28} Detectives testified that two cell phones, food storage materials, guns, ammunition, scales, and money discovered on Johnson's person were intended to be used for a criminal purpose. Because of the ubiquitous nature of cell phones, possession of two cell phones, without more, fails to prove Ms. Smith used or intended to use the phones for a criminal purpose. Smith and Johnson were detained in the living room during the search. We cannot say that any reasonable person could find that two cell phones being in the proximity of two individuals temporarily detained by law enforcement is alone sufficient evidence of a criminal purpose. Speculative evidence is not sufficient to establish that the accused had possession of the controlled substances. There is no evidence in the record that

Smith intended to use the phones or "miscellaneous cards"[8] for an illegal purpose. Similarly, there was no evidence that Ms. Smith was aware of the money discovered during the search of Johnson's person or that he secured the money by illegal means.

{¶ 29} The state asks this court to infer that Ms. Smith had knowledge of the illegal marijuana and suspected criminal tools found upstairs merely because she lived in and owned the residence. However, R.C. 2925.11 explicitly excludes mere proximity to the drugs or ownership of the residence as a sole basis for establishing constructive possession of controlled substances. "Constructive possession is the determination that the defendant had knowledge of the item purportedly possessed." *See State v. Alexander*, 8th Dist. Cuyahoga No. 90509, 2009-Ohio-597, ¶ 24; *State v. Voll*, 3d Dist. Union No. 14-12-04, 2012-Ohio-3900, ¶ 19.

{¶ 30} The state conceded that Johnson held a patient's medical marijuana license before the search warrant was executed. (Defense Ex. E). The kitchen cabinet where the bag was found contained paperwork belonging only to Johnson. After reviewing the evidence found upstairs, in a light most favorable to the state, we could reasonably infer that Ms. Smith knew that there was marijuana in the kitchen. Notably, given Johnson's marijuana license, there is no evidence that the marijuana found in the kitchen was illegal, nor does the record support an inference that Ms. Smith knew it was illegal. In fact, both Detectives Griffis and Stanton testified that the package branding, Terrasana, is a legal marijuana dispensary

---

[8] The record does not provide details regarding the nature of the miscellaneous cards.

located in Cuyahoga County. Moreover, there is no evidence of the quantity of marijuana found upstairs, that it exceeded a quantity permissible for personal use, or that it came from anywhere other than Terrasana.

{¶ 31} The state essentially asks this court to infer knowledge of illegal marijuana found in plain view when a household member is legally prescribed the drug based on their ownership of the residence. We note that there are many law-abiding citizens who store legal prescription medications that also happen to be controlled substances in homes they share with others. "Criminal convictions cannot rest upon mere speculation; the state must establish the guilt of the accused by proof beyond a reasonable doubt." *State v. Smith*, 39 Ohio App.2d 190, 196, 316 N.E.2d 902 (1st Dist.1974).

{¶ 32} Moreover, appellate courts have long exercised caution when inferring constructive possession of controlled substances found in shared premises. *See State v. Pumpelly*, 77 Ohio App.3d 470, 602 N.E.2d 714 (12th Dist.1991); *State v. Swalley*, 11th Dist. Ashtabula No. 2010-A-0008, 2011-Ohio-2092, ¶ 61. In the present case, there is no evidence that Ms. Smith had knowledge, constructive or actual, that the controlled substances found upstairs were illegal or that any of the suspected criminal tools were intended for a criminal purpose.

{¶ 33} The remaining controlled substances and suspected criminal tools were found in the basement. The state argues in its brief that there was nothing separating the two sides of the basement. (State's Brief 11.) However, this claim is not supported by the record. The basement consisted of two separate sides. One

side contained a laundry area with a clothes washer, dryer, and sink. The other side housed a "barber's section area." The record reveals that Johnson was a barber and that he used the barbershop area. The state offered circumstantial evidence that the bag containing illegal quantities of marijuana belonged to him. There was mail bearing only Johnson's name in the duffle bag and no evidence that Ms. Smith had ready access to the barbershop area. There was no evidence that she had ever been in the barber's station area of the basement. Consequently, we find Ms. Smith's argument persuasive.

{¶ 34} After careful consideration of the entire record and surrounding facts and circumstances, we find that the state failed to offer sufficient evidence that Ms. Smith knew there was illegal marijuana or criminal tools in the residence. (State's exhibit No. 22.)

{¶ 35} When weighing the evidence in a light most favorable to the state, reasonable minds could not find, beyond a reasonable doubt, Ms. Smith guilty of each element of possession of illegal drugs or criminal tools. Accordingly, Ms. Smith's first assignment of error is sustained.

{¶ 36} We find that Ms. Smith's first assignment of error is dispositive; therefore, her second assignment of error is moot, and we decline to address it.

{¶ 37} Judgment is reversed. Ms. Smith's convictions of possession of drugs in Count 2 and possession of criminal tools in Count 3 are vacated.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

EILEEN A. GALLAGHER, P.J., CONCURS;
EILEEN T. GALLAGHER, J., DISSENTS (WITH SEPARATE OPINION)

EILEEN T. GALLAGHER, J., DISSENTING:

{¶ 38} I respectfully dissent from the majority's determination that there is insufficient evidence to support Smith's convictions for drug possession and possession of criminal tools.

{¶ 39} The majority concludes "[t]he record before us fails to demonstrate that there were readily usable, illegal drugs or criminal tools in plain view." However, the investigative officers who conducted the search found marijuana, packaging materials, and a scale in plain view on a counter in the kitchen, a common area of the house. (*See* state's exhibit Nos. 22 and 32, tr. 47 and 91.) They also found a large quantity of marijuana, packaging materials, a scale, cash, firearms, and ammunition in the basement. (*See* state's exhibit No. 32, tr. 38.) Therefore, there is undeniable evidence that there were drugs and criminal tools in plain view throughout the house at the time of the search at which Smith was present.

{¶ 40} The majority nevertheless maintains there is no evidence that Smith knew the drugs were illegal because Johnson had a medical marijuana license. However, Officer Michael Griffis ("Officer Griffis"), the Solon police officer assigned to the S.E.A.L.E. Narcotics Task Force who participated in the execution of the search warrant, identified the packaging material found in the house as Shield N Seal, a food saver type bag "commonly used for the packaging of marijuana." (Tr. 41.) A photograph shows Shield N Seal bagging material next to a bag of marijuana on the counter in the kitchen. (*See* state's exhibit No. 22.) These are not items that a medical-marijuana patient uses for treatment purposes; they are evidence of drug trafficking. Indeed, Officer Griffis testified that there was marijuana throughout the home in amounts "far more than personal use" and that, under those circumstances, Smith "would be well aware of what was going on." (Tr. 70-71.)

{¶ 41} Furthermore, police determined, prior to the search, that a red Dodge Durango was involved in suspected drug trafficking. (Tr. 132.) The Durango was registered to Smith. (Tr. 132.) While conducting surveillance, police repeatedly observed the Durango at the Eastwood address. (Tr. 131-132.) That the Durango was used in drug trafficking, by itself, does not conclusively establish that Smith was aware of the drug activity. However, the use of Smith's vehicle in drug activity and its consistent presence at the house provides additional circumstantial evidence that she was aware of the activity, and the fact that neither she nor Johnson were the original targets of the investigation is irrelevant to that issue.

{¶ 42} In sum, the police found drugs, firearms, cash, and drug paraphernalia in plain view throughout the Eastwood home. The quantity of drugs was more than one would possess for personal or medicinal use, and the drugs were found with packaging materials typically used for drug trafficking. Police repeatedly observed a vehicle, registered to Smith, that was involved in suspected drug activity at the Eastwood address. Therefore, I would find there is sufficient evidence in the record to support Smith's convictions. And because the evidence is competent and credible and no contradictory evidence was presented, I would also find that the convictions are not against the manifest weight of the evidence.