AMATULLIS, INC., APPELLANT, *v.* GREAT CENTRAL INS. CO.,
APPELLEE.

(No. 1481—Decided October 27, 1971.)

APPEAL: Court of Appeals for Montgomery County.

*Messrs. Baggott, Logan & Gianuglou,* for appellant.
*Messrs. Curtner, Selva & Parkin* and *Mr. William H.
Thornburgh,* for appellee.

KERNS, J. The defendant, Great Central Insurance Co.,
appellee herein, issued a policy of insurance to the plaintiff,
Amatullis, Inc., appellant herein, covering the contents of
a grocery store located in Dayton, Ohio, operated by Joseph
Amatulli. The insurance policy included an endorsement
which extended coverage to a loss of earnings resulting from
business interruption. Thereafter, on June 16, 1967,
the store was destroyed by fire.

The amount of the loss was in dispute, and both sides entered into arbitration through representatives named pursuant to the appraisal provision of the insurance policy. On January 12, 1968, the representatives of the parties established the contents loss, exclusive of any amount for loss of earnings, at $61,154.70.

Thereupon, the insurance company prepared a partial proof of loss in the amount agreed upon and mailed it to the plaintiff's representative. This proof of loss was executed by Amatulli on January 17, 1968, and forwarded to the defendant company which received it on January 22, 1968.

In the meantime, negotiations continued in an effort to determine the amount due for business interruption, but on March 20, 1968, Joseph Amatulli was indicted for arson by the grand jury of Montgomery County, at which time all negotiations ceased, awaiting the determination of the arson charge.

On June 13, 1968, the present action was commenced claiming the $61,154.70 agreed upon, as well as $20,000 for an alleged loss of earnings due to business interruption.

On September 26, 1968, Amatulli was acquitted, and negotiations then resumed to settle for the loss covered by the loss of earnings endorsement. On January 24, 1969, the parties reached an agreement that this loss amounted to $2,471.93.

The insurance company then prepared a proof of loss totaling $63,626.63 which included the amounts agreed upon for both loss of contents and loss of earnings, but the plaintiff refused to execute this instrument contending that such action could be interpreted as a waiver of the interest due on the claim for $61,154.70.

Subsequently, the case was presented to the court of common pleas which entered judgment in favor of the defendant. This judgment forms the basis for the present appeal, but by agreed entry, the principal sum of $63,626.63 has been paid by the defendant company with the understanding that acceptance thereof by the plaintiff does not constitute a waiver of interest.

Hence, the question presented herein relates solely to interest.

The insurance contract specifically provides that "the amount of loss for which this company may be liable shall be payable sixty days after proof of loss is received by the company," and the evidence shows that the partial proof of loss, prepared by the insurer and duly executed by the insured, was received by the company on January 22, 1968. At that point, there was no disagreement between the parties as to the amount due for loss of contents, and the amount due, according to the policy, was payable by March 22, 1968.

Nothing appears elsewhere in the policy provisions, or in the evidence presented in this case, which even slightly obscures the intentions of the parties as of January 22, 1968. Rather, it was the indictment for arson on March 20, 1968, that gave new direction to the course being followed by the insurer. Understandably, the company withheld payment because conviction of the charge would have provided a complete defense from liability on the contract.

However, this unusual circumstance does not alter the policy provisions. Nor does it detract from the plaintiff's right to payment on March 22, 1968. Under the circumstances, the plaintiff was not responsible for the overshadowing effect which the criminal charge had upon the previous agreement of the parties.

Furthermore, interest followed the award, and the company, which retained and continued to use the initial award of $61,154.70 after March 22, 1968, is not in a position to claim any real or substantial loss from the payment of interest.

In denying liability for accrued interest on the amounts of the awards, the defendant argues that the policy anticipates but one proof of loss regardless of the nature or the amount of damage. In so doing, the company relies upon the following language of the policy:

"The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the

umpire. An award in writing, so itemized, of any two when filed with this company shall determine the amount of actual cash value and loss.''

In construing this language, the trial court said:

''The amount of the award, so itemized, must then be incorporated into a proof of loss which must be delivered to the company. By its terms, the policy provides for one proof of loss for the total claim; to hold otherwise would be to modify the method provided in the policy for determining an award by the appraisers and for determining the time when the loss is payable. The failure of the policy to provide for separate awards on separate claims eliminates that as a possibility. The methods or procedure voluntarily adopted by the appraisers to reach an award does not control and has no influence in construing the contract.''

In our opinion, neither the language of the policy nor its intendment embraces such an inflexible attitude toward settlement and compromise. Indeed, under such construction, the insured could unwittingly be compelled to step over dollars in a search for pennies. The only alternative would be to sacrifice small claims in order to collect interest on substantial claims. For example, in the present case, the interest accumulation on the award for loss of contents exceeds the amount of the entire award for loss of earnings.

The word ''item,'' as used in the appraisal provision under consideration, does not necessarily extend to the loss of earnings endorsement attached to the policy, and this construction is borne out, to some extent, by the paragraph immediately following the appraisal provision which says that ''it shall be optional with this company to take all, or any part, of the property at the agreed or appraised value, and also to repair, rebuild or replace the property destroyed or damaged with other of like kind and quality.''

In other words, it may well be that the appraisal provision alludes only to items or articles of tangible property rather than to all of the various types of coverage available with a multi-peril insurance policy.

But in any event, it is fundamental, as in the interpre-

tation of all insurance contracts, that this ambiguity must be resolved in favor of the insured.

Significantly, the loss covered by the standard policy and the loss covered by the endorsement thereon are distinct and severable, and the policy contains no express prohibition which would preclude an agreement to settle any reasonably separable loss covered by the terms of the insurance contract. Parenthetically, it may be observed that the defendant company apparently shared this view when it prepared and issued the partial proof of loss in the amount of $61,154.70.

The basic issue in this case is not subject to any of the overriding considerations which might be prompted by the criminal charge. We are of the opinion that the plaintiff is entitled to interest on the award of $61,154.70 from March 22, 1968, and that he is entitled to interest on the award of $2,471.93 from March 25, 1969.

Accordingly, the judgment will be reversed and the cause remanded to the trial court for further proceedings according to law.

*Judgment reversed.*

SHERER, P. J., and CRAWFORD, J., concur.