NURSING STAFF OF CINCINNATI, INC., APPELLEE AND CROSS-APPELLANT, *v.* SHERMAN, APPELLANT AND CROSS-APPELLEE, ET AL.

(No. C-830360—Decided March 21, 1984.)

*Messrs. Strauss, Troy & Ruehlmann* and *Mr. Ernest A. Eynon II,* for appellee and cross-appellant.

*Messrs. Eppstein & Berg, Mr. John L. Berg* and *Mr. Richard A. Magnus,* for appellant and cross-appellee.

*Per Curiam.* This cause came on to be heard upon an appeal and cross-appeal from the Hamilton County Municipal Court.

The appeal and cross-appeal in the case *sub judice* are taken from the judgment of the Municipal Court awarding damages to Nursing Staff of Cincinnati, Inc. (hereinafter referred to as "Nursing Staff") in an action brought to recover that amount due and owing under an account for private-duty nursing services rendered on behalf of the mother of the defendant-appellant, Marty Sherman.

According to testimony presented at trial, Sherman's mother, a woman of advanced years, became ill in the course of a visit to Cincinnati, and was admitted to a hospital for treatment. During her stay in the hospital, surgery was performed, and the attending physician thereafter advised Sherman to retain the services of a private-duty nurse to assist his mother in the process of recuperation.

In accordance with the doctor's recommendation, the necessary arrangements were made with Nursing Staff to have Sherman's mother placed under the care of either a registered nurse or a licensed practical nurse on a full-time basis while she recovered from the surgery. The various nurses assigned to the task worked in eight-hour shifts for a period of approximately four weeks, and Sherman was billed directly for their services at his home address according to the

terms of a fixed fee schedule. When no action was taken in response to the bills or to Nursing Staff's numerous requests for payment on the account, the instant action was filed in the municipal court with both Sherman and his mother named as defendants.

On the day trial was scheduled to commence, judgment was confessed in favor of Nursing Staff on its claim against Sherman's mother. According to the judgment entry, Nursing Staff was awarded the full amount owing under the account and was also given interest on that amount computed at an annual rate of eighteen percent[1] from the date the debt became due. No action has since been taken to contest the mother's liability, and in the absence of a timely appeal to this court, the judgment against her has ripened to finality.

Unlike his mother, Sherman vigorously denied that he was, in any manner, responsible for the account, and Nursing Staff's separate claim against him was, accordingly, tried before a judge of the municipal court after the parties had duly waived their right to a jury. At the conclusion of the trial, the judge determined from the evidence before him that Sherman had caused the nursing services to be performed for his mother's benefit and had confirmed to Nursing Staff through a letter signed by his wife, Shirley, that he would pay for the services rendered on his mother's behalf. Nursing Staff was, therefore, given judgment in an amount equivalent to that due and owing under the account, with interest on that sum computed at the rate established by law from the date of the judgment entry. Coincident with the announcement of his findings and conclusions, the judge denied a motion by Nursing Staff for prejudgment interest on its claim against Sherman, and the appropriate entries were

thereafter placed of record to reflect the judge's various rulings.

The three assignments of error given to us in Sherman's appeal read as follows:

"The trial court erred to the prejudice of Defendant-Appellant in finding that Shirley Sherman was authorized to act for Marty, and in concluding that her actions could bind him.

"The trial court erred to the prejudice of Defendant-Appellant in finding that the corporation's services would not have been provided but for the letters on which Shirley Sherman signed Marty's name.

"The trial court erred to the prejudice of Defendant-Appellant in holding Marty liable."

In our estimation, each assignment may properly be regarded as a derivative of a single claim attacking the court's judgment as being against the manifest weight of the evidence adduced at trial and contrary to law. With the assignments cast in this light, the question controlling our resolution of the appeal is whether the record contains some competent, credible evidence going to all the essential elements of Nursing Staff's claim against Sherman; if there is such evidence within the record, we cannot, as a reviewing court, interfere with the trial court's resolution of the disputed issues in favor of Nursing Staff. *C. E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261].

Although it may accurately be said that much of the testimony presented at trial was characterized by conflict and imprecision, the one point that strikes us as being unassailable from our review of the transcript of the proceedings is that Sherman did, in fact, order the services ultimately supplied by Nursing Staff for his mother's benefit. Given even this modest degree of certainty, we think it fair to say that the evidence adduced by

---

[1] We assume that the chosen rate of interest was based upon the parties' understanding of the terms of the account. See fn. 3, *infra.*

the parties was otherwise sufficient to support a conclusion that Sherman obligated himself to pay for the services rendered on his mother's behalf, either directly by his actions taken in ordering the services or indirectly by the actions of his wife in signing his name to a form in acceptance of the terms and conditions of the employment relationship. Although Sherman adamantly denied at trial that his wife had been authorized to sign the document on his behalf, it is our view that the trier of fact was entitled to conclude, under the circumstances, that an agency relationship was implicit at the time his signature was placed on the form, or that Sherman later ratified the actions of his wife. We must conclude, therefore, that the trial court's judgment was supported by some competent, credible evidence going to each of the essential elements of Nursing Staff's claim. The three assignments of error given to us in Sherman's appeal are, accordingly, without merit.

Turning now to the two assignments of error advanced by Nursing Staff in its cross-appeal, we are first confronted with the assertion that the trial judge erred by permitting Sherman to contest at trial a material fact that was the subject of a request for admission to which he had failed to respond. Citing Civ. R. 36(A), Nursing Staff reasons that the legitimacy of its account should not have been subject to dispute at trial pursuant to that provision of the rule deeming a failure to respond to a request to be an admission.

In our estimation, this claim of error is without merit for two reasons. In the first place, we are convinced that the action of the trial judge was consistent with the authority provided by Civ. R. 36(B) to grant relief from the effect of an admission previously made in accordance with the rule. Although there was not a formal request for such relief on behalf of Sherman in compliance with the procedure set forth in the rule,[2] we are unwilling to hold that this precluded the trial judge from acting to serve what he believed to be the best interests of justice. Even if we assume *arguendo* that the failure to abide by the specified procedural format constituted error, we fail to see on the state of this record how that error resulted in any substantial prejudice to Nursing Staff. It is our conclusion, therefore, that Nursing Staff can derive no comfort from its first assignment of error.

In the second assignment of error, Nursing Staff challenges the trial judge's refusal to include an award of prejudgment interest as part of the disposition of the claim against Sherman. It was contrary to law to permit interest to be assessed only from the date of the judgment entry, Nursing Staff reasons, because the claim for which Sherman was held liable was based exclusively upon a liquidated debt.

The general rule in Ohio, as Nursing Staff has suggested, holds that a party's entitlement to prejudgment interest must turn, in major part, upon a determination as to whether the underlying debt is liquidated; if the amount of a debt is clear and certain, the prevailing party is generally entitled to interest from the date the sum became due and owing, and this remains true when the only question raised at trial concerns the party to whom the debt is properly chargeable. See *Shaker Savings Assn.* v. *Greenwood Village, Inc.* (1982), 7 Ohio App. 3d 141; *Braverman* v. *Spriggs*

---

[2] Civ. R. 36(B) reads, in relevant part, as follows:

"Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provisons of Rule 16 governing modification of a pretrial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits. * * *"

(1980), 68 Ohio App. 2d 58 [22 O.O.3d 47]. A mere denial that one is liable for a debt that is otherwise clear and ascertainable is not sufficient to defeat a claim for prejudgment interest. *Braverman, supra,* at 60.

In the case *sub judice,* the record demonstrates that the amount due and owing under the account was fixed in weekly billings in accordance with an hourly rate made known to Sherman. Sherman's only defense at trial was predicated upon the theory that the account was not properly chargeable to him, and there was no evidence tendered to the court to dispute the computation of the debt or its accuracy and reasonableness. Under these circumstances, we are persuaded that the judge should have awarded interest on Nursing Staff's liquidated claim from the date the debt became due and owing. The second assignment of error is, accordingly, well taken.

The judgment of the municipal court stands affirmed with respect to the amount adjudged to be due and owing under the account and is hereby modified, as a matter of law, pursuant to App. R. 12(B) to include interest on that amount at a rate of ten percent per annum[3] from May 28, 1981.

*Judgment accordingly.*

KEEFE, P.J., SHANNON and KLUSMEIER, JJ., concur.

---

[3] According to the terms of the account, interest on unpaid amounts due is to be computed at an annual rate of eighteen percent, "or the legal interest rate, whichever is lower." In Ohio, the legal rate of interest has been set by statute at ten percent per annum, R.C. 1343.03, and we have, therefore, used the lesser statutory rate as a basis for our modification of the trial court's judgment.