**Dunn**
**v.**
**Westlake**
*[Cite as 3 AOA 23]*

*Case No. C-880422*
*Hamilton County (1st)*
*Decided May 9, 1990*

*Sirkin, Pinales, Mezibov & Schwartz, Marc D. Mezibov, Esq., and Edmund J. McKenna, Esq., 832 Fourth and Race Tower, 105 West Fourth Street, Cincinnati, Ohio 45202, for Plaintiffs-Appellees/Cross-Appellants.*

*Waite, Schneider, Bayless & Chesley Co., L.P.A., Stanley M. Chesley, Esq., and Terrence L. Goodman, Esq., 1513 Central Trust Tower, Cincinnati, Ohio 45202, for Defendant-Appellant/Cross-Appellee.*

*Per Curiam.*

This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Court of Common Pleas of Hamilton County, Ohio, the transcript of the proceedings, the assignments of error, the briefs and the arguments of counsel.

Defendant Robert Westlake appeals from the order of the Hamilton County Court of Common Pleas holding him liable for damages in the amount of $22,500, with prejudgment interest, for the breach of a contract to pay $45,000 for the architectural services of plaintiffs Thomas R. Dunn and Robert A. Wendel, doing business as Dunn & Wendel Architects (Dunn and Wendel). His four assignments of error raise issues concerning the construction of the contract, the application of principles of agency, and the propriety of the award of prejudgment interest. We hold that the award of prejudgment interest was erroneous, but we find no merit in Westlake's remaining assignments. Dunn and Wendel, in their cross-appeal, assert that the trial court's award of only one-half of the agreed contract price was against the manifest weight of the evidence. Because the record does not support either the trial court's award of one-half the contract price or an award of the entire contract price, we reverse the damage award and remand this case for further proceedings.

Westlake is an officer and 50% owner of Sump, Inc., a Georgia corporation incorporated on August 9, 1977, as Shelter Concepts, Inc. (Shelter Concepts), with a general purpose to invest in, develop and manage real property. The remaining 50% of the corporation is owned by Glenn Shepherd, who is also an officer of the company. Dunn and Wendel, who had been employed by Shepherd and Westlake on previous projects, were hired by Shepherd to prepare plans for the development of an apartment complex to be known as Village in the Woods, located in Greenville, South Carolina. At the time Dunn and Wendel were hired, Westlake held an option to purchase land in South Carolina to be used for the complex.

Two preliminary proposals for Dunn and Wendel's services under various terms were considered by the parties and rejected. A third proposal, in form of a letter dated October 19, 1977, from Dunn and Wendel to Glenn Shepherd, was finally accepted. Under the terms of the letter, Dunn and Wendel were to provide the following work:

"A. Preliminary Site Plan.

"B. Working Drawings

"C. Short form specifications (same as Arrowhead)[1]

"D. Ink plans for rental brochure of each apartment type. Plaintiff's Trial Exhibit 3."

Fees and payments for the services were stated as follows:

"We will provide the above services for the lump sum of ($7,100) seven thousand, one hundred dollars per apartment building type plus ($9,500) nine thousand, five hundred dollars for the club house. As in the past, we would defer payment, if necessary, until closing. If the location of the original site proves unsatisfactory for financial reasons, the preliminary work necessary resite the project would be accomplished at no additional cost. If the project does not proceed beyond the preliminary stage, the costs, except travel and printing, would be absorbed by Dunn & Wendel. Work authorized to continue beyond step A will be according to the following fee structure:

| | |
|---|---|
| 5 apartment building types | $35,500 |
| Club house | $ 9,500 |
| | $45,000" |

Dunn and Wendel began work on the project in the fall of 1977 and completed the bulk of the working drawings by the summer of 1978. In April 1979, Dunn and Wendel, having made numerous revisions of the drawings at Shepherd's request, submitted a partial bill to Shepherd to be forwarded to Westlake for payment. Dunn and Wendel continued to make revisions as requested by Shepherd and by Westlake, who met with Dunn and Wendel personally sometime in August 1979 and assured the architects that payment would be forthcoming.[2]

Later in August 1979, the project was effectively abandoned by Westlake when he was informed that the option he held on the South Carolina property would not be renewed. Dunn and Wendel learned late in 1979 that the project would not be completed, and they brought suit against Westlake for the price of their services as set forth in the contract. A motion to amend their complaint was later filed,[3] in which they sought to include Shelter Concepts as a defendant and to advance allegations of fraud and of entitlement to damages under a quantum merit theory. The trial court, by adopting Dunn and Wendel's findings of fact and conclusions of law,

found that the mutual intent of the parties was to establish the architect's entitlement to a fee upon completion of working drawings, and to share equally the risk of the project not closing. Accordingly, Dunn and Wendel were awarded one-half of the contract price, or $22,500.[4]

In his first assignment of error, Westlake asserts that the trial court erred by finding him personally liable, because, he maintains, Dunn and Wendel contracted only with Shelter Concepts. His argument is premised on three facts: (1) that Dunn and Wendel's correspondence, including the letter that formed the contract at issue, was addressed to Glenn Shepherd's business office; (2) that payment for various expenses was made to Dunn and Wendel by checks bearing the name Shelter Concepts, Inc.; and (3) that the drawings prepared by Dunn and Wendel conspicuously bore the name Shelter Concepts. We do not believe, however, that such evidence controlled the issue of liability.

Where neither the existence of an agency relationship nor the identity of a corporate principal is known to a third party, the agent is personally liable for obligations entered into by the agent with the third party. *Mark Peterson Dental Labs, Inc. v. Kral* (1983), 9 Ohio App. 3d 163, 458 N.E.2d 1290; *Tri-State Carpet Supplies, Inc. v. Solomon* (Nov. 23, 1983), Hamilton App. No. C-830272, unreported. In order to avoid personal liability, *the agent must disclose to the party with whom he is dealing* (1) the agency relationship and (2) the identity of the principal. *Peterson, supra* at 164, 458 N.E.2d at 1291. (Emphasis added.) When, in the course of a transaction, the identity of a previously undisclosed principal is discovered by a third party, that party may elect to pursue either the principal or the agent, but both cannot be held liable. *James G. Smith & Associates, Inc. v. Everett* (1981), 1 Ohio App. 3d 118, 120, 439 N.E.2d 932, 935.

In the case before us, Dunn and Wendel were aware that Glenn Shepherd and Robert Westlake were conducting business together, but the architects were never affirmatively informed that Shepherd and Westlake were acting only as agents for Shelter Concepts. It was only after the architects had been paid by Shelter Concepts, or after they had been requested to place the company's name on their drawings, that they had any notice of the principal's existence or identity. Although Dunn and Wendel later added Shelter Concepts as a defendant in their action, they have consistently asserted Westlake's personal liability, and at not time have they evidenced any intent to elect to hold the corporation liable in place of Westlake. We therefore overrule Westlake's first assignment of error.

Westlake's second assignment of error is addressed to the trial court's award of prejudgment interest. We agree that the trial court erred in awarding such interest because there was not a liquidated amount owed to Dunn & Wendel.

A party is entitled to prejudgment interest under R.C. 1343.03 only when the underlying debt is liquidated, or, in other words, when the amount is clear and certain. *Nursing Staff of Cincinnati Inc. v. Sherman* (1984), 13 Ohio App. 3d 328, 469 N.E.2d 1031. The contract price stated in this case is $45,000. As our discussion of Dunn and Wendel's cross-assignment of error indicates, however, it is unclear whether Dunn and Wendel are entitled to the full amount of the contract. We therefore conclude that the award of prejudgment interest in this case was in error. Westlake's second assignment of error address is sustained.

Westlake's third and fourth assignments of error address similar issues of contract interpretation, and we accordingly consolidate our analysis of them. The third assignment of error challenges the trial court's finding of liability because, Westlake asserts, payment under the contract was conditioned on the closing of the Village in the Woods project, an event which obviously did not occur. In his fourth assignment of error, Westlake claims the trial court failed to construe in his favor the terms of the contract drafted by Dunn and Wendel. Neither contention is well taken.

The parties dispute the meaning of the following sentence: As in the past, we would defer payment, if necessary until closing. Under the past practice of the parties referred to in the contract, Dunn and Wendel would receive payment for their work, out of the loan proceeds provided to Westlake, at the time financing was obtained from a lender. At no time in the past, however, had Westlake failed either to obtain the financing or to pay Dunn and Wendel for their services. We hold that Westlake's obligation to pay was not itself conditioned on his successful closing of a loan. Instead, the contract merely provided Westlake the opportunity to defer his payment until a later time. When it became apparent in the present case that the

anticipated closing would never occur, the amount owed to Dunn and Wendel under the contract became due and payable. The fact that Dunn and Wendel drafted the contract does not require judgment in Westlake's favor under the rule that contractual ambiguities should be resolved against the party who drafted the contract, because we are convinced that the contract is unambiguous with respect to Westlake's obligation to pay. Therefore, Westlake's third and fourth the assignments of error are overruled.

Before we address the cross-appeal brought by Dunn and Wendel, we must first address a procedural issue that has not been raised in the arguments of the parties. This court has previously held that an appeal filed by a party who has prevailed in the trial court cannot be addressed on the merits when that party has failed to file a motion for new trial pursuant to Civ. R. 59. See *Smith v. Grinker & Sudman* (Nov. 10, 1987), Hamilton App. No. C-870064, unreported; *Brogan v. Hagan* (1986), 26 Ohio App. 3d 81, 498 N.E.2d 234; *Krailler v. Carey* (Nov. 26 1986), Hamilton App. No. C-860013, unreported; *McHale v. Jenkins* (June 29, 1983), Hamilton App. No. C-820705, unreported. The purpose of the rule, as enunciated in *McHale v. Jenkins, supra,* and *Brogan v. Hagan, supra,* is to afford the trial court the opportunity to redress any errors claimed by a prevailing party by the granting of a new trial. *See Brogan v. Hagan, supra,* at 83, 498 N.E.2d at 236. Without providing the trial court the opportunity to pass upon the claimed errors, a prevailing party is normally unable to demonstrate the prejudice that allows an aggrieved party to prosecute an appeal. *McHale v. Jenkins, supra,* slip. op. at 2 and 4.

This court has previously extended the rule of *McHale v. Jenkins, supra,* to preclude a cross-appeal filed by a prevailing party in response to an appeal by the party against whom the trial court has entered judgment, where the prevailing party has failed to make the requisite motion for a new trial. *Patrick Media Group, Inc. v. Schneider* (Nov. 8, 1989), Hamilton App. No. C-880386, unreported; Henry v. Serey (1989), 46 Ohio App. 3d 93, 546 N.E.2d 474.

We now hold the application of the rule to be inappropriate in cases involving cross-appeals by prevailing parties. Although the reasoning advanced in cases involving primary appeals by prevailing parties, such as *McHale v. Jenkins, supra,* is appropriately applied in those circumstances, a party filing a cross-appeal in response to the primary appeal of its adversary has done all that it can do to preserve its claims of error. Once the primary appeal has been filed by the opposing party, the trial court is divested of its jurisdiction, and consideration of the prevailing party's motion for a new trial would require a limited remand of the cause solely for the purpose of affording the prevailing party an opportunity to move for, and obtain a ruling on, a new trial. See *In re Kurthalz* (1943), 141 Ohio St. 432, 48 N.E.2d 657, *Manes v. Espy* (Oct. 31, 1979), Hamilton App. No. C-77724, unreported. We hold that such a formality need not be observed under circumstances where appellate review properly has been initiated upon an independent basis, i.e., the primary appeal of the non-prevailing party. The distinction to be recognized under such circumstances is whether there remains in the trial court any opportunity to avoid altogether any appeal, regardless of the number of errors that might be claimed upon review, and not specifically whether the number of errors advanced in an appeal may be reduced by a motion for a new trial.

At least one of the justifications for requiring a prevailing party to move for a new trial, *i.e.* avoidance of an unnecessary appeal, is no longer served where there exists an independent basis for review. Also, the opposing party, by seeking appellate review and filing its notice of appeal, could hinder a prevailing party's ability to move for a new trial and preserve its claimed error for review. In such cases, the requirement that the prevailing party move for a new trial encourages a race to the courthouse, a result that is not consonant with the interests of justice.

We therefore conclude that a motion for new trial pursuant to Civ. R. 59 is not required before this court can consider the merits of a cross-appeal filed by a party who has prevailed in the trial court, but our holding is limited only to those cases where the prevailing party has filed its notice of appeal *after* the filing of a primary appeal by an aggrieved party in the trial court. To the extent that our previous decisions in *Patrick Media Group, supra,* and *Serey, supra,* are inconsistent with our present holding, they are overruled.

In the sole assignment of error raised in the cross-appeal, Dunn and Wendel claim that the trial court's determination that they were entitled to damages of only one-half of the contract price is manifestly against the weight

of the evidence. We agree with Dunn and Wendel. Although the architects agreed to absorb their costs if the Village in the Woods project did not proceed beyond the preparation of a preliminary site plan, the record reflects that the project did indeed extend beyond the preliminary stage, and that working drawings were prepared. Dunn and Wendel's agreement to absorb their costs at the preliminary stage cannot be construed as an agreement to share in equal measure the risk of the project not closing. We are unable to say that the amount of the trial court's judgment was supported by competent, credible evidence, and we must therefore conclude that the damage award was against the manifest weight of the evidence.

We are unable to enter a damage award as a matter of law, however, because the record does not support the conclusion that Dunn and Wendel were entitled to the entire contract price. No testimony was adduced at trial relating to whether the firm provided the short form specifications or the Ink plans for rental brochure of each apartment type, listed on the contract as work to be performed by Dunn and Wendel. Although such work may form only a minor portion of the work to be provided, we cannot make this conclusion as a matter of law from the record before us. To reach a conclusion with respect to an appropriate damage award, it must first be determined whether Dunn and Wendel have fully, or at least substantially, performed the contract. See *O. F. Mehurin & Son v. Stone* (1881), 37 Ohio St. 49 paragraph four of the syllabus; *Au Rustproofing Center, Inc. v. Gulf Oil Corp.* (C.A. 6, 1985), 755 F.2d 1231.

We therefore affirm the trial court's judgment with respect to the issue of Westlake's liability. The damage award of $22,500 and the award of prejudgment interest, however, are reversed, and this cause is remanded for further proceedings to determine what damages Dunn and Wendel are entitled to recover from Westlake under the alternative theories of breach of contract or quantum meruit, in accordance with this decision and the law.

*Judgment affirmed in part,*
*reversed in part, and*
*cause remanded.*

SHANNON, P.J., DOAN and UTZ, JJ.

---

[1] Dunn and Wendel were previously employed by Westlake in a series of real estate developments known generally as Arrowhead. These projects did not involve Shelter Concepts as a principal, however.

[2] Shortly before Westlake met with Dunn and Wendel, in June or July of 1979, Glenn Shepherd and Robert Westlake ceased doing business together, and Shepherd's duties were taken over by Forrest Kelley. Glen Shepherd remains a shareholder of Shelter Concepts, however.

[3] The trial court failed to rule on Dunn and Wendel's motion to amend their complaint, but the parties apparently proceeded to trial under the assumption that the complaint had been amended. See Civ. R 15(B). An express disposition of the quantum meruit theory contained in the proposed amended complaint was not made by the trial court. We consider the trial court to have rejected that theory in favor of the theory it advanced in its judgment entry. Neither party claims prejudice from the trial court's failure to resolve explicitly the quantum merit count. We nevertheless consider the theory to be part of the case, and in light of our remand on the issue of damages pursuant to our resolution of the cross-appeal, the trial court should consider on remand whether any damages should be awarded under the alternative theory of quantum meruit.

[4] According to the trial court's Agreed Entry of February 4, 1988, the judgment entered on June 18, 1987, is against only Robert Westlake, individually. A further entry dated February 5, 1988, granted judgment in favor of Shelter Concepts. A later, *nunc pro tunc* entry dated June 14, 1988, but stated to be effective June 16, 1987, dismissed Dunn and Wendel's complaint against Shelter Concepts.