983 F.2d 1065
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
David L. AULD, Plaintiff-Appellee,
v.
Johnny VINSON, Defendant-Appellant.
 No. 92-3153.
 United States Court of Appeals, Sixth Circuit.
 Jan. 6, 1993.
 
 Before DAVID A. NELSON and SILER, Circuit Judges, and MILES, Senior District Judge.*
 PER CURIAM.
 
 
 1
 This action arises from a breach of contract by the defendant. Granting a motion for partial summary judgment, the district court awarded the plaintiff judgment for $3.9 million plus prejudgment interest. Although a claim for declaratory relief and a counterclaim remain pending, the award of damages has been certified for an interlocutory appeal.
 
 
 2
 One of the arguments advanced by the defendant on appeal is that the award creates a double recovery. The district court said that such a recovery would not be permitted, however, and we see no reason not to take the court at its word. Accordingly, and because it is clear on the undisputed facts that the plaintiff is entitled to be paid $3.9 million plus interest from the date on which the money was due, we shall affirm the award.
 
 
 3
 * The plaintiff and the defendant, each of whom owned a one-half interest in a 2000 acre tract of land in Texas, formed a joint venture to take title to the property. Article Five of the joint venture agreement provided that the parties' interests in the joint venture were personal property. Article Ten of the agreement gave the plaintiff a contractual right to "put" his joint venture interest to the defendant on certain contract anniversary dates. (The complete text of the relevant portion of Article Ten is set forth as an appendix to this opinion.)
 
 
 4
 Exercise of the put as of the third anniversary, April 30, 1990, would obligate the defendant to buy the plaintiff's joint venture interest for $3.9 million in cash, payable not later than April 30. If for any reason the defendant proved unable to acquire the plaintiff's interest after exercise of the put, the agreement further provided, the joint venture would be terminated and in addition to all other rights to be paid the option price the plaintiff would be authorized to cause the sale of the real estate and divide the proceeds.
 
 
 5
 The plaintiff gave proper notice of his exercise of the put as of April 30, 1990. The defendant was unable to come up with the agreed purchase price, and the plaintiff filed suit in a state court in Ohio.
 
 
 6
 The defendant removed the case to federal court on diversity grounds and moved for a change of venue to Texas under 28 U.S.C. § 1404. The plaintiff filed a motion for partial summary judgment six weeks later.
 
 
 7
 After denying the motion for a change of venue, the district court entered summary judgment for the plaintiff on Count One of the complaint, wherein the plaintiff had claimed damages of $3.9 million plus interest. Count Two of the complaint--wherein the plaintiff had sought a declaratory judgment on his right to cause a sale of the real estate--remained pending, as did a counterclaim asserted by the defendant. Finding no just reason for delay, the district court directed entry of a final judgment on Count One pursuant to Rule 54(b), Fed.R.Civ.P.
 
 
 8
 The defendant promptly moved to vacate the judgment and to amend the Rule 54(b) order. Soon thereafter the defendant filed a petition for protection under Chapter 11 of the Bankruptcy Code. While the automatic stay prescribed by 11 U.S.C. § 362 was in effect, and as permitted by 11 U.S.C. § 108(b)(2), the defendant filed various motions to alter or amend the judgment or for alternative relief from judgment. When the bankruptcy stay was subsequently lifted, the plaintiff moved to correct the entry of judgment to reflect the award of interest from April 30, 1990. (As originally entered, the judgment awarded "$3,900,000, plus interest and costs," without specifying that interest should run from the date as of which the agreement specified that the $3.9 million would be paid.)
 
 
 9
 By order entered on December 17, 1991, the district court (1) explained the basis of its Rule 54(b) certification; (2) overruled the various motions in which the defendant had sought relief from the partial summary judgment; and (3) granted the plaintiff's motion for amendment of the judgment entry to provide for prejudgment interest. This appeal followed.
 
 II
 
 10
 In response to requests for admissions served shortly after the filing of the complaint, the defendant admitted, among other things,
 
 
 11
 --that the joint venture agreement accompanying the complaint was a true and accurate copy of the parties' contract;
 
 
 12
 --that the agreement was supported by sufficient and valid consideration;
 
 
 13
 --that the plaintiff had given fair and proper notice of the exercise of the put option created by Article Ten of the agreement;
 
 
 14
 --that the defendant had not paid the plaintiff the $3.9 million requested in the letter exercising the put; and
 
 
 15
 --that the defendant was obligated to pay the plaintiff $3.9 million pursuant to the terms and conditions of the joint venture agreement.
 
 
 16
 In his answer to the complaint, the defendant asserted that because he had made good faith efforts to raise the $3.9 million, he was not in breach of the agreement. This argument--which we are unable to reconcile with the plain language of Article Ten--was not pressed in the brief filed by the defendant in opposition to the plaintiff's motion for partial summary judgment.[1] The defendant argued instead that only a court in Texas would have jurisdiction to resolve the issues raised by Count Two of the complaint, and that the action should therefore be transferred to Texas for reasons of judicial economy. The district court rejected this argument, and the court's resolution of the jurisdictional issue is not being challenged on appeal.
 
 
 17
 Despite his earlier concession that he was obligated to pay the plaintiff $3.9 million pursuant to the terms and conditions of the joint venture agreement, the defendant argues now
 
 
 18
 --that the proper measure of damages is the difference between $3.9 million and the fair market value of a one-half interest in the joint venture as of April 30, 1990;
 
 
 19
 --that summary judgment was inappropriate because of the existence of a genuine issue as to what the fair market value was;
 
 
 20
 --that because the quantum of damages remains to be determined, prejudgment interest is not available under Ohio law; and
 
 
 21
 --that the summary judgment results in double recovery because it awards the plaintiff $3.9 million for his joint venture interest while allowing him to retain ownership of that interest.
 
 
 22
 We address the last of these arguments first. In footnote 6 at page 9 of the opinion entered on December 17, 1991, the district court noted that:
 
 
 23
 "The Court's award of $3,900,000 to the Plaintiff clearly assumes that upon receipt, [the plaintiff's] interest in the Joint Venture will be transferred to [the defendant]. Any problem of 'double recover[y]' will be confronted at the appropriate time."
 
 
 24
 We read this as saying that the plaintiff will not be allowed to collect the cash and keep the joint venture interest too. The defendant argues, however, that judgment for the purchase price should not have been entered before there was a formal tender of the joint venture interest. Because no such tender was made, he says, "the judgment results in double recovery because it awards [the plaintiff] the purchase price for his joint venture interest and at the same time permits him to retain title to the interest." While acknowledging footnote 6 in one breath, the defendant says in the next breath that
 
 
 25
 "there is nothing ... the district court's judgment requiring [the plaintiff] to convey the interest to [the defendant] upon satisfaction of the $3.9 million judgment. The judgment, as presently worded, erroneously allows [the plaintiff] to execute the judgment against [the defendant] and retain his interest in the joint venture after the judgment is satisfied."
 
 
 26
 We do not find this argument persuasive. In the first place, although the plaintiff might have been required to tender a deed of conveyance and keep the tender good with a deposit of the deed in court if the joint venture agreement had been a contract for the sale of real estate, see Fairlawn Heights Co. v. Theis, 133 Ohio St. 387, 14 N.E.2d 1 (1938) (second paragraph of the court's syllabus), the joint venture agreement was not a real estate contract. Article Five of the agreement confirms the obvious fact that the plaintiff's joint venture interest was "personal property." By certified letter mailed to the defendant within the time prescribed in Article Ten of the joint venture agreement, the plaintiff gave notice under that article of the exercise of his option "to sell you my interest in the Joint Venture [i.e., the intangible personal property interest created by the contract] for $3,900,000.00." The defendant admits that the option was properly exercised and admits that he never requested any further tender. He has cited no authority for the proposition that some further tender of the plaintiff's intangible property interest was required, and we are aware of none.
 
 
 27
 In the second place, the district court's opinion clearly says that the plaintiff's interest in the joint venture will be transferred upon receipt by the plaintiff of the money due him.[2] The plaintiff has acknowledged on the record, through counsel, that he would have no right to pocket the money and keep the joint venture interest too. If we were to ask the district court whether the plaintiff could nonetheless exercise such a right, we have no doubt what the answer would be: "Not while this court sits."
 
 
 28
 The defendant's remaining arguments turn on the proposition that because of the absence of a formal tender, the plaintiff was not entitled to judgment for the full $3.9 million that the defendant admittedly was obligated to pay on April 30, 1990. Without passing on the question whether the defendant waived the right to assert this proposition by failing to raise it in timely fashion, we reject the proposition on its merits; no tender, beyond that contained in the letter exercising the put, was required. We also reject the proposition that the full $3.9 million contract price is not the proper measure of damages. We fail to see how any sum less than the full contract price could fully compensate Auld for his damages, particularly in view of the fact that the parties' agreement contains transfer restrictions which limit Auld's ability to realize the value of his joint venture interest by selling it to a third party. Under the joint venture agreement the plaintiff was clearly entitled to receive $3.9 million in cash on or before April 30, 1990, and the judgment entered by the district court gave the plaintiff nothing more nor less than what the defendant had promised.
 
 
 29
 Because the defendant's obligation to pay the plaintiff $3.9 million in cash on April 30, 1990, was clear and certain, the plaintiff is entitled to recover interest from the date as of which the money ought to have been paid. Nursing Staff of Cincinnati, Inc. v. Sherman, 13 Ohio App.3d 328, 330; 469 N.E.2d 1031, 1034 (Hamilton Co. 1984); Ohio Rev.Code Ann. § 1343.03(A) (Baldwin 1992). Without prejudgment interest, the plaintiff obviously could not be made whole.
 
 
 30
 With respect to the decision of the district court to direct the entry of final judgment on Count One pursuant to Rule 54(b), Fed.R.Civ.P., we note that the court's original decision was defective because it did not state the reason for the determination that there was no just reason for delay. See Solomon v. Aetna Life Ins. Co., 782 F.2d 58, 61 (6th Cir.1986) (district court should give a reasoned statement explaining a Rule 54(b) certification; absent such a statement the certification is entitled to no deference on appeal). The district court cured this defect by giving a full explanation in the opinion and order entered on December 17, 1991. Giving the district court's explanation the deference to which it is entitled, we accept jurisdiction over the appeal from the judgment on Count One. For the reasons stated above, the judgment is
 
 
 31
 AFFIRMED.
 
 APPENDIX
 Article Ten--Options
 
 32
 At the third, fourth and fifth anniversaries of this Agreement Auld and Vinson shall have the following options with respect to the Real Estate:
 
 
 33
 (1) Auld shall have the option on such anniversary to sell Auld's interest in the Joint Venture to Vinson, and if Auld elects to exercise such option, Vinson shall be required to purchase not less than all of Auld's interest in the Joint Venture. If the option is exercised on the third anniversay, the purchase price will be $3,900,000. If the option is exercised on the fourth anniversary, the option price will be $4,200,000; and if the option is exercised on the fifth anniversary, the option price will be $4,500,000. An option granted under this Article 10 is exercisable by notice in writing to such effect by Auld to Vinson no later than 90 days prior to the anniversary on which such option is to be exercised. The purchase price must be paid in cash not later than the anniversary to which the notice relates. Auld and Vinson agree to use good faith efforts to accomplish the sale if the option is exercised. If Auld exercises its option and Vinson for any reason is not able to acquire the Auld interest as described herein, this Joint Venture will be terminated and in addition to all other rights Auld has against Vinson to be paid the option price, Auld will be authorized to cause the sale of the Real Estate and divide the proceeds as described in Article 7.
 
 
 
 *
 The Honorable Wendell A. Miles, Senior United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 Although the defendant had denied a request to admit that the plaintiff had complied with his own obligations under the joint venture agreement, the defendant did not oppose the motion for partial summary judgment on this ground either
 
 
 [2]
 Technically, perhaps, the joint venture interest would not be transferred, but the joint venture would be terminated and the defendant, having paid his indebtedness in full, would acquire title to the entire tract of land. The net result would be the same as a transfer