**OUTDOOR OUTFITTERS, INC.,** Appellant,

v.

**FIREMAN'S FUND INSURANCE COMPANY,** Appellee.

[Cite as *Outdoor Outfitters, Inc. v. Fireman's Fund Ins. Co.* (1994), 98 Ohio App.3d 733.]

Court of Appeals of Ohio,
Hamilton County.

No. C–930682.

Decided Nov. 16, 1994.

734

*Ruppert, Bronson, Chicarelli & Smith, James D. Ruppert* and *John D. Smith,* for appellant.

*Martin, Bailey & MacDonald* and *Stephen A. Bailey,* for appellee.

MARIANNA BROWN BETTMAN, Judge.

On December 21, 1987, Outdoor Outfitters, Inc., plaintiff-appellant ("Outdoor Outfitters" or "insured"), filed an action against Fireman's Fund Insurance Company, defendant-appellee ("Fireman's Fund" or "insurer"), for breach of a fire insurance contract based on the insured's claims of property loss and business-interruption loss and for the tort of bad faith in the denial of the claim.

On February 16, 1987, Outdoor Outfitters' Cincinnati store was completely destroyed by fire. Outdoor Outfitters was insured by Fireman's Fund for loss of property (inventory, stock, and fixtures) and for interruption of business. In a separate criminal case, the president of Outdoor Outfitters and the manager of the Cincinnati store were tried for arson but were acquitted. Nevertheless, Fireman's Fund denied coverage in this civil action, relying on the defense of arson.

Following a jury trial, a verdict was returned in favor of Fireman's Fund on the bad-faith claim and in favor of Outdoor Outfitters on the issue of coverage. Outdoor Outfitters was awarded damages of $514,617.03 for property loss and $175,000 for business-interruption loss.

After judgment, Outdoor Outfitters timely filed a motion for prejudgment interest. Following a hearing, the trial court denied this motion. Outdoor Outfitters appeals from the denial of its motion for prejudgment interest. In its sole assignment of error, Outdoor Outfitters argues that the trial court erred in

overruling its motion for prejudgment interest on the jury verdict. For the reasons that follow, we reverse the trial court's decision.

Because there was some confusion on this point at the motion hearing, we note at the outset that the statute applicable to this case is R.C. 1343.03(A), which provides for interest on instruments in writing, including insurance contracts. *Clevenger v. Westfield Companies* (1978) 60 Ohio App.2d 1, 14 O.O.3d 3, 395 N.E.2d 377. The motion has nothing to do with R.C. 1343.03(C), which entitles a party to prejudgment interest in tort claims upon a finding of the failure of the losing party to make a good-faith effort to settle the claim when the prevailing party did make a good-faith effort to do so. To determine whether Outdoor Outfitters is entitled to prejudgment interest on this insurance policy coverage claim, we must decide whether the claim is liquidated, in which case prejudgment interest would be allowed, or unliquidated, in which case it would not.

Under current Ohio law, if the amount of a debt is clear and certain, the prevailing party is generally entitled to interest from the date the sum became due and owing. *Nursing Staff of Cincinnati, Inc. v. Sherman* (1984), 13 Ohio App.3d 328, 13 OBR 406, 469 N.E.2d 1031. See *Shaker Sav. Assn. v. Greenwood Village, Inc.* (1982), 7 Ohio App.3d 141, 7 OBR 184, 454 N.E.2d 984; *Braverman v. Spriggs* (1980), 68 Ohio App.2d 58, 22 O.O.3d 47, 426 N.E.2d 526.

The term "liquidated claim" means one that can be determined with exactness by agreement of the parties or by the application of definite rules of law. *Yin v. Amino Products Co.* (1943), 141 Ohio St. 21, 29, 25 O.O. 136, 139, 46 N.E.2d 610, 613–614; *Hartenstein v. Pepsico World Trading Co., Inc.* (Aug. 11, 1993), Hamilton App. Nos. C–920292 and C–920340, unreported, 1993 WL 303719. An example would be a contract for life insurance that specifically states that upon the death of the insured, the beneficiary is entitled to proceeds of $100,000. Another example is where Company A rents a piece of equipment from Company B for $100 per day, uses the equipment for eight days and refuses to pay Company B. A simple computation will reveal the amount owed to Company B. See, *e.g., Tony Zumbo & Son Constr. Co. v. Ohio Dept. of Transp.* (1984), 22 Ohio App.3d 141, 22 OBR 381, 490 N.E.2d 621.

It is also true, and significant to this case, that a mere denial that one is liable for a debt will not make a claim unliquidated and defeat a claim for prejudgment interest. *Braverman, supra,* 68 Ohio App.2d at 60, 22 O.O.3d at 48, 426 N.E.2d at 527.

Outdoor Outfitters argues that, because Fireman's Fund never disputed the amounts of its losses and did not present alternative valuations for the property and business-interruption losses, electing only to cross-examine Outdoor Outfitters' experts and to rely on the arson defense to defeat the claims, the amount of

its losses is undisputed and therefore liquidated. It also argues that because the jury awarded it the exact amount of losses it asked for, which was the same as that submitted in its proofs of loss, the claims are liquidated.

By their very nature, fire losses such as these are ordinarily unliquidated, in that the amount cannot be determined with simple mathematical calculations. *Royal Crown Plastics, Inc. v. Motorists Mut. Ins. Co.* (1976), 51 Ohio App.2d 79, 82, 5 O.O.3d 190, 191, 366 N.E.2d 294, 296. To determine whether the fire-loss claims in this case became liquidated or remained unliquidated requires a careful analysis of the insurance policy.

The pertinent sections of the policy in this case are the loss-adjustment provisions, particularly the loss-payments provisions.[1] Under the contract, when a fire loss occurs, the insured must notify the insurer of the loss. There is no dispute that Outdoor Outfitters complied with this provision in a timely fashion. The next duty of the insured is to submit proofs of loss in an acceptable and timely manner. In this case, Outdoor Outfitters submitted its proof of loss for property damage on May 26, 1987, in the amount of $514,617.03. On September 4, 1987, a proof of loss for business interruption was submitted in the amount of $175,000.[2] At this point these claims were clearly unliquidated.

Under the terms of the policy, a loss would become due and payable within thirty or sixty days (depending on whether the general or specific policy provision is applicable) from the time the company accepted the statement of loss or after a figure had been fixed by the appraisal process. In the event of a disagreement as to the amount of the loss, either party could invoke the appraisal process which provided for a procedure to fix the amount of loss using a panel of three appraisers.

Once Outdoor Outfitters presented its proofs of loss, Fireman's Fund had several choices. First, it could have accepted coverage for the loss and accepted the amount of losses presented. Second, it could have accepted coverage for the loss but challenged the amount of losses claimed. Its final choice would have been to deny coverage for the loss but accept or reject the amount of loss. In all three instances, however, we hold that Fireman's Fund had to respond to the figures submitted by Outdoor Outfitters by accepting or rejecting those figures.

What happened in this case is that on October 30, 1987, Fireman's Fund denied liability, meaning coverage, for the loss. Rather than dispute the amounts

---

1. There are actually two different sections of the policy which could be involved, the special fire insurance provisions and the general property loss provisions. The duties in each are approximately the same. Any differences have no bearing on our resolution of this case.

2. This claim was originally not in a form acceptable to the insurer and was resubmitted, for the same amount, on October 19, 1987.

of loss offered by Outdoor Outfitters and deny coverage, it chose only to contest coverage for the loss. Fireman's Fund argues that, because it never accepted the amount of the loss and because there was never an appraisal, the loss never became payable under the terms of the policy and, therefore, the claim remained unliquidated. We disagree with this interpretation. We believe the only fair reading of the policy is to require the insurer to notify the insured about whether or not it accepted the amount of the losses. See, by analogy, from another area of insurance law, *McDonald v. Republic–Franklin Ins. Co.* (1989), 45 Ohio St.3d 27, 543 N.E.2d 456 (duty of insurer to respond within a reasonable time to settlement offer made to insured). This is especially so because, under the terms of the policy, Fireman's Fund was not required to select one remedy or the other. The policy expressly allowed the insurer to demand an appraisal, participate in the appraisal process and still deny the claim. Fireman's Fund chose not to do so. Outdoor Outfitters was not obliged to request an appraisal since it was never notified that the insurer disagreed with the figures it submitted.

■ Therefore, because Fireman's Fund never disputed the figures offered by Outdoor Outfitters in its proofs of loss and never participated in the appraisal process, but instead made the decision to rely solely on its denial of coverage through its arson defense, we hold that the amount of losses presented by Outdoor Outfitters was deemed accepted by Fireman's Fund. Compare *Royal Crown Plastics, supra* (insurer denied a fire-loss claim because of alleged arson, but participated in the appraisal process, thus fixing the value of the loss from the date of appraisal), and *DiStacio v. Westfield Ins. Co.* (Aug. 26, 1985), Butler App. No. CA84–10–120, unreported, 1985 WL 7712 (insurer rejected the statement of loss and denied the claim). As a result of the choice made by Fireman's Fund solely to contest liability, these claims became liquidated on the date coverage was denied.[3]

Accordingly, we reverse the decision of the trial court and remand this case with instructions to enter judgment for Outdoor Outfitters on the jury's verdict, together with simple interest at ten percent per annum from October 30, 1987, until the judgment is paid.

*Judgment reversed*
*and cause remanded.*

SHANNON, P.J., and GORMAN, J., concur.

---

3. As a general rule, interest starts to run from the time the loss is deemed payable under the policy. *Amatullis, Inc. v. Great Cent. Ins. Co.* (1971), 36 Ohio App.2d 106, 65 O.O.2d 103, 302 N.E.2d 892. Because of the lack of clarity in the record on this point, we date the running of prejudgment interest from the date coverage was denied. See Annotation, Fire Loss–Right to Prejudgment Interest (1993), 5 A.L.R.4th 126, Section 14, and cases cited therein.